(No. 24791.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALBERT BLOOM, Plaintiff in Error.

*Opinion filed December 15, 1938.*

JAMES M. BURKE, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, BLAIR L. VARNES, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Albert Bloom and Aleck Portugias were indicted in the criminal court of Cook county for the crime of burglary. Bloom was tried by the court and a jury and found guilty. After motions for a new trial and in arrest of judgment were overruled, judgment was entered and the defendant

was sentenced to imprisonment in the penitentiary. By this writ of error the defendant seeks a reversal of the judgment.

Moe Garfinkel, a resident of Chicago, in October, 1926, was engaged in the business of manufacturing and selling ladies' dresses in that city. He had about twelve persons in his employ. On the night of the twenty-first of the month and year mentioned he had in stock on the sixth floor of a building at 327 South Market street, silk and cloth dresses and bolts of silk. Preparatory to a shipment on certain orders received, he separated from his stock a number of dresses for delivery the following day, October 22. He was the last one in his place of business the night of October 21 and locked the door and left at about 6:15 o'clock. The following morning Kapel Rothblatt, a tailor and "dress operator" employed by Garfinkel, reached the building on South Market street at 7:20 o'clock. When he was within about ten feet of the door he saw a new automobile standing in front of the building and two men were carrying dresses from the building to the automobile. Immediately after the automobile was driven away a fellow-employee arrived at the building and Rothblatt told him about the two men taking away dresses in the automobile. Elevator service in the building did not commence until 7:30 o'clock and Rothblatt waited for the elevator but the other employee walked up the stairs to his place of work. When Rothblatt reached the sixth floor he discovered that the lock on the door at Garfinkel's place of business was broken. One of the employees notified Garfinkel of the fact and the latter immediately went to the building and found that eighty-two dresses, valued at from $10.75 to $12.75 each, and seven bolts of silk, valued at $110, each, had been removed. He notified police officers of his loss.

The testimony on behalf of the People is that Rothblatt did not suspect the two men were wrongfully removing the dresses when he first saw them but supposed that Garfinkel was in his place of business and that the dresses were

being delivered upon the latter's orders. Rothblatt, however, took notice of the automobile, observed the two men and subsequently, when he learned the dresses had been stolen, gave a description of the men he had seen with the dresses to police officers. Four days after the burglary Garfinkel and Rothblatt went to a police station where the two men were detained and Rothblatt identified them as the persons who took the dresses from the building. Rothblatt testified that eight men had been placed in a line and that he pointed out the defendant, who wore the same clothing as when he first saw him, except that he did not have a hat on his head. A sergeant of police corroborated Rothblatt's testimony relative to the identification of the two men. The sergeant testified that when Rothblatt made the identification the former questioned Rothblatt in the presence of the defendant and Rothblatt stated when and where he saw the defendant. Rothblatt was asked what the defendant was doing, and replied, "He was carrying dresses out of the building and putting them into a machine that was parked in front of the building." The sergeant testified that the defendant said nothing.

The defense was an alibi. The defendant, a brother, two sisters and a brother-in-law, all testified that on the night of October 21, 1926, there was a family party at the home of the defendant's father and mother, where the defendant also lived. One sister and the brother-in-law who resided elsewhere remained at the parents' home over night. Three of the witnesses testified that the defendant was at home the night of the party and did not waken on the morning of October 22 until nearly 8:00 o'clock and that he thereafter ate his breakfast at the same place and left for work some time after 8:00 o'clock. The defendant's brother testified that he left the house before 8:00 o'clock and the defendant was still there, and the defendant's brother-in-law testified that he saw the defendant a short time before 8:00 o'clock at the latter's home on the morning of Octo-

ber 22. In addition to the alibi, to which the defendant also testified, he stated that Rothblatt did not identify him at the police station but said, "That looks like the fellow," and that Portugias was not in the line at that time, and Rothblatt did not point out Portugias.

It is contended that the court erred in permitting the witness Rothblatt, over the objection of the defendant's counsel, to testify that "When this case came up in the police court Bloom told me·if I tell anything on him before the judge he would get me and if I prosecute him I will be sorry;" that the statement was uncorroborated, created a collateral issue, to the defendant's prejudice, and that it was susceptible of being construed as a complete admission of guilt or confession, which rendered it inadmissible. The test of the admissibility of evidence is the connection of the facts proved with the offense charged and any testimony having a tendency to show a defendant's guilt is competent. (*People* v. *Burke,* 313 Ill. 576; *People* v. *McGuirk,* 312 id. 257; *People* v. *Buckner,* 281 id. 340.) The language used was with reference to the interest, activity or testimony of the witness at the police court. It is fairly inferable that the defendant had in mind the proceedings in the police court with respect to the issue of his guilt. The language was of a threatening character. Any attempt by a party to a suit, either civil or criminal, to conceal or, by threats or otherwise, to suppress evidence or obstruct an investigation of· an issue, is relevant upon the trial of such issue. In a criminal prosecution any attempted intimidation of a witness is properly attributable to a consciousness of guilt, and testimony relating thereto is relevant and admissible in evidence. (*People* v. *Spaulding,* 309 Ill. 292; I Wigmore on Evidence, (2d ed.) secs. 267, 278; I Wharton's Crim. Ev. (11th ed.) secs. 300, 305; *Commonwealth* v. *Webster,* 59 Mass. 295; *Keesier* v. *State,* 154 Ind. 242; *Commonwealth* v. *Marion,* 232 Pa. 413; *State* v. *Matthews,* 202 Mo. 143; *People* v. *Chin Hane,* 108 Cal. 597; *Deisher*

v. *State,* 80 Tex. Crim. 428.) The statement was not a confession but was a threat of undefined consequences if Rothblatt participated in the defendant's prosecution. An acknowledgment of a fact which may have some tendency to establish guilt is not a confession but only an incriminating admission which may be made without any intention of confessing guilt. (*People* v. *Gibbs,* 349 Ill. 83; *People* v. *Herkless,* 361 id. 32.) The testimony had some tendency to show consciousness of guilt and for that purpose was admissible. *People* v. *Spaulding, supra; People* v. *Gibbs, supra.*

At one point in the argument of the assistant State's attorney to the jury he said: "He [meaning the defendant] knows this man Portugias and Portugias is gone," and later in the argument remarked that the defendant had volunteered a statement that he (the defendant) was "not picked up on this case." The assistant State's attorney said: "I wonder what the defendant meant by that," and shook his finger in the face of the defendant. Objections were made to both of the remarks. It is urged that the first quoted remark was a false statement and that the defendant was not shown to be responsible for Portugias' absence. The defendant admitted knowing Portugias "since we were picked out there" but stated that he did not know where Portugias was at the time of the trial. Fourteen instructions were given the jury to guide it in its consideration of the case. There was no ruling upon the objection to the second quoted remark. We cannot perceive how it was prejudicial. It is not a cause for reversal of the judgment. The defendant's counsel refers to other parts of the argument of the assistant State's attorney. No objection was made in the trial court to any parts of the argument not already discussed. To preserve such a question for review it is essential that an objection be made in the trial court. *People* v. *McDonald,* 365 Ill. 233; *People* v. *Cohen,* 363 id. 303.

It is argued that the verdict of the jury was contrary to the evidence; that the People's case rested entirely upon the uncorroborated testimony of Rothblatt, which was contradicted by four reputable witnesses who testified that the defendant was at the home of his parents at the time the crime was committed. It is true that only one witness identified the defendant, but the defense of an alibi is an affirmative defense and the weight of the testimony is for the jury.

The defendant denied that Rothblatt directly identified him, but testified that Rothblatt said the defendant looked like one of the men removing the dresses from the building in which Garfinkel's place of business was located. The testimony discloses that Rothblatt had ample opportunity for observing the two men on the morning of the burglary and he gave a description of each of them. His identification of the defendant was positive. The sergeant's testimony was also contrary to that of the defendant upon what was said by Rothblatt at the police station.

A greater number of witnesses testified for the defense than for the People, but that fact is not of controlling importance. Where an identification is positive and the testimony is credible a judgment will not be reversed because there is only one identifying witness and a greater number of persons testify that the defendant was elsewhere when the crime was committed. Questions of the credibility of witnesses and the weight of the evidence are for the jury. *People* v. *Filas,* 369 Ill. 78; *People* v. *Kerbeck,* 362 id. 251; *People* v. *Fortino,* 356 id. 415.

Some of the errors alleged upon the motion for a new trial are renewed in this court. They relate to the admission of evidence and the argument of the assistant State's attorney, which we have already considered. There was no error in overruling the motion for a new trial.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*