**UNITED STATES of America**

v.

**Albert Solomon HEFFLER**
**and**
**Donald Joseph Cecchini.**

**Crim. No. 22567.**

United States District Court
E. D. Pennsylvania.

June 30, 1967.

James C. Lightfoot, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

A. A. Guarino, Philadelphia, Pa., for defendant, Donald Joseph Cecchini.

Louis Lipschitz, Philadelphia, Pa., for defendant Albert Solomon Heffler.

## OPINION

FULLAM, District Judge.

The defendant, Donald Joseph Cecchini, was indicted along with Albert Solomon Heffler on charges of conspiracy to commit an offense against the United States (18 U.S.C. § 371) and solicitation of a bribe by a public official (18 U.S.C. § 201(c)). In the

course of the trial the co-defendant Heffler (in the absence of the jury) entered a plea of nolo contendere to the conspiracy charge. The defendant Cecchini's trial continued and resulted in a verdict of guilty on both counts. Defendant has now moved for judgment of acquittal and for a new trial.

There is no merit in the motion for judgment, nor in the assertion that a new trial should be granted because the verdict was contrary to the weight of the evidence. There was ample direct evidence, from a reputable and seemingly impartial witness, that both defendants, acting together, solicited a substantial bribe in exchange for influencing the award of government contracts. Cecchini's testimony to the contrary was quite incredible.

Whether the defendant could have accomplished what he was offering to do is immaterial, Hurley v. United States, 192 F.2d 297 (4th Cir. 1951). Some government witnesses testified that he would not have been able to influence the award of contracts, because of the procedural safeguards then in force. On the other hand, Cecchini's position as a supervising engineer (research, development and engineering), at the Air Force Materiel Command in St. Louis, was entirely consistent with the idea that he might have been able to influence contractual awards; at least, he was clearly in a position to pose as a person with the required degree of influence. The fact that Cecchini had already received his termination notice and was shortly to leave government service does not detract from the fact that he was a public official, as defined in the statute, at the time of the alleged offense.

I have carefully reviewed the numerous assignments of trial error, and am not persuaded that there is merit in any of them. Only a few require brief discussion.

At the outset of the trial, both defendants moved for severance. Both motions were denied, without prejudice to later renewal if subsequent events indicated that severance should be granted. Later in the trial, the defendant Heffler changed his plea to nolo contendere, and it is now claimed that the court erred in refusing Cecchini's motion for mistrial based upon that occurrence. The change of plea took place after an overnight recess, and all proceedings related thereto were conducted in the absence of the jury. The jury was advised simply that, for reasons which did not concern them, it had proven impossible to proceed further with the trial of Mr. Heffler, and that his case had therefore been continued, but the trial of Cecchini would be resumed. Great care was taken to avoid any suggestion that a plea had been entered, and I was then and am now convinced that no prejudice to the defendant Cecchini resulted from the procedures followed. Of particular significance is the fact that, as noted in overruling the motion at the time, no evidence was received in the trial of Cecchini while Heffler was still in the case which would not have been equally admissible against Cecchini alone.

Counsel for the defendant subsequently renewed his motion for mistrial, on the further ground of prejudicial newspaper publicity during the course of the trial. It is apparently the contention that the Philadelphia Evening Bulletin printed an article during the course of the trial reporting upon the change of plea by the defendant Heffler. However, counsel did not respond to the court's invitation to get something on the record in support of his motion for mistrial, and there is therefore no basis whatever for granting a new trial on this ground. The newspaper article complained of is not in the record, although I do recall reading it and my refusal of the motion at trial was not based upon the failure to establish the contents of the article (the article was very brief, and was not printed in a prominent location). There is no evidence that any members of the jury saw the article, let alone that they were influenced by it.

██ By treating the matter at this length I do not mean to intimate that the defendant would be entitled to a new trial even if the jury had been made aware of Heffler's change of plea. Cecchini's defense was entirely consistent with the idea that Heffler was guilty.

The government's evidence was to the effect that the prosecuting witness, acting president of a corporation engaged in defense work, contacted the F.B.I. at the first mention of a bribe offer, and was thereafter, on at least two occasions, equipped with tape recording devices to record his conversations with one or more of the two defendants. One of the resulting tapes was admittedly defective and inadmissible (it recorded only one end of a telephone conversation), but the government made a good faith attempt to authenticate and introduce into evidence the remaining tape recording. The recording was played in the absence of the jury. Enough was clearly audible to incriminate the defendant Heffler and to corroborate the testimony of the prosecuting witness implicating the defendant Cecchini. However, because of background noises and various other technical difficulties, parts of the conversation were inaudible, and I indicated (in a conference in chambers) that I would sustain a defense objection to the tape, at least in the government's case in chief. The government subsequently decided not to offer the tape in evidence, but by reason of what had occurred up to that point in the presence of the jury, a government witness was permitted to testify that he had heard the tape played back and that it did not contain a complete and accurate rendition of the conversation in question. The jury was emphatically instructed that they could draw no inferences either way as to the alleged tape recordings; that is, that they could not infer that the tape recordings corroborated the testimony of the prosecuting witness as to the conversation in question, nor could they infer that the tape recordings failed to corroborate the testimony of the prosecuting witness.

██ No objection was expressed at trial to this method of procedure, but it is now argued that a new trial should be granted because the electronic equipment for playing back the tape recording remained in the courtroom thereafter. The record does not establish whether or not this was the case, but in any event the incident is obviously too trivial to require further notice.

██ In further reference to the government's attempt to include the tape recording as part of its evidence, it should be pointed out that the conversation recorded was between the prosecuting witness, Eggart, and the defendant Heffler. Eggart himself testified at length as to the contents of that conversation. That this evidence was admissible against Cecchini if the jury found from other evidence that he was part of the conspiracy, there can be no doubt. The recording was played in the presence of the defendant and his counsel. Enough of the conversation was audible to make it very clear that Heffler was guilty (he changed his plea shortly after hearing the recording); and the indicated ruling which resulted in the recording being kept from the jury was favorable to the defendant Cecchini, perhaps unduly so. He can hardly be heard to complain that the government should have been prevented from presenting any explanation as to the failure to introduce the tape in evidence, or that the jury should have been permitted to draw inferences favorable to the defendant from the government's failure to present the tape. Moreover, as indicated above, the defendant Cecchini could not have been prejudiced by any of this tape recording evidence, since his claim of innocence was entirely consistent with Heffler's being guilty.

██ Counsel for the defendant argues strenuously that the evidence as to this conversation and earlier conversations between Heffler and Eggart were inadmissible against the defendant Cecchini, as hearsay. The jury was clearly advised of the co-conspirator rule, and was repeatedly instructed that they

should disregard all of this evidence unless they found from the other evidence, beyond a reasonable doubt, that a conspiracy existed as of the dates of the respective conversations with Heffler. I am satisfied that these rulings and instructions were correct.

I have carefully considered all of the remaining contentions of the defendant, but I am not persuaded that any prejudicial error was committed. The defendant received a fair trial and the jury reached the only reasonable verdict, under the evidence.

Motions of the defendant Donald Joseph Cecchini for judgment of acquittal and for a new trial denied.