DWAYNE P. ARNDT, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 9679

December 28, 1977                    572 P.2d 538

*Sinai, Ohlson, and Schroeder,* Reno, for Appellant.

*Robert List,* Attorney General, Carson City; *Larry R. Hicks,* District Attorney, and *John L. Conner,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

Appellant, charged by indictment with murder, pursuant to plea negotiations, entered a plea of guilty to second degree

murder. During the sentencing proceedings, he was permitted to withdraw his plea of guilty, after which he entered a plea of not guilty by reason of insanity. On January 3, 1977, the first day of trial, following empanelment of the jury, the court recessed with the evidentiary portion of the trial to begin the next day. After the jury had been excused, however, the appellant and counsel remained in court at which time the appellant withdrew his plea of not guilty by reason of insanity and entered a plea of not guilty.

The following morning, on appellant's motion, the court convened out of the presence of the jury to consider his request that the trial judge voir dire the jury to determine whether any juror had read the *Nevada State Journal* newspaper article appearing in that morning's edition. The article indicated that the appellant had previously entered a plea of guilty which he subsequently withdrew. The court determined that a voir dire examination would only call unnecessary attention to the news article. In addition, the court noted that after the jury had been empaneled the previous day, but before it was excused, it had, in comporting with NRS 175.401(2),[1] admonished the jurors that they were, *inter alia,* "not to read any newspaper article or listen to or view any radio or television newscasts concerning this case." The trial court denied the request.

Here, the appellant asserts only one claim of error. Did the trial court's refusal to voir dire the jury violate appellant's due process rights and thereby deprive him of his right to an impartial jury? If it did, we would be constrained to reverse.

The Sixth Amendment to the United States Constitution, reads in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an *impartial* jury." (Emphasis added.) The Nevada Constitution Article I, Section 3, further guarantees this basic right.

In response to the constitutional challenge made by appellant, the respondent argues that the court was at liberty to exercise its sound discretion in this matter and that the error, if indeed any, was harmless. In support of this harmless error

---

[1]NRS 175.401(2). *"Jury to be admonished at each adjournment.* The jury must also, at each adjournment of the court, whether they be permitted to separate or be kept in charge of officers, be admonished by the court that it is their duty not to:

. . .

(2) Read, watch or listen to any report of or commentary on the trial or any person connected with the trial by any medium of information, including without limitation newspapers, television and radio; . . . ."

contention, respondent points to the overwhelming evidence produced at trial which demonstrated appellant's guilt. For example, the victim was murdered by multiple gunshot and stab wounds to vital parts of the anatomy. Eyewitnesses placed the appellant a few feet from the victim at the time of the murder with a gun and knife in his hand. Both eyewitnesses testified that appellant repeatedly struck the victim in the chest, one testifying to the appellant's use of a knife, while the other, appellant's mother, had no recollection of a knife being in appellant's hand during the striking. All three individuals present at the time of the homicide were examined for gunshot residue, with considerable amounts of this inculpatory evidence found on the palm and backside of appellant's hands. A state's expert testified without contradiction that traces of residue on the backside of the hand are of the greatest significance in determining who handled and fired the weapon.

The state presented persuasive evidence indicating motives for the killing, which included evidence of possible financial gain and repeated beatings, coupled with forced homosexual activity by decedent against appellant.

Moreover, evidence was presented which showed that on several different occasions the appellant expressed an interest in killing the victim and in having the victim killed by others. Witnesses testified as to appellant's direct and indirect admissions of guilt. Finally, the appellant's explanation of the incident was remarkably inconsistent with the physical evidence of the crime scene.

It is within the foregoing factual context that the respondent opposes the appellant's sole assignment of error.

In Marshall v. United States, 360 U.S. 310, 313 (1959), the Supreme Court stated that the prejudicial news items must be "tempered by protective measures." This Court, in Pacheco v. State, 82 Nev. 172, 414 P.2d 100 (1966), suggested to the trial courts in this state that the then existing statutory admonishments be supplemented with a further admonishment that jurors exercise restraint in not exposing themselves to media accounts concerning the case in which they are empaneled. The Legislature subsequently amended the statute to clothe this suggestion with the status of law. NRS 175.401(2).

Appellant's principal reliance is on Crowe v. State, 84 Nev. 358, 441 P.2d 90 (1968). Although *Crowe* on its face has some similarity to the case before us, it is in fact inapposite and of no assistance to appellant. In *Crowe, supra,* not only did the trial court refuse to poll the jurors pertaining to their possible exposure to a prejudicial news article appearing after

enpanelment but prior to the evidentiary portion of the trial, but the court failed to admonish the jurors at all. Further, both appellant and respondent there agreed that the news article was prejudicial.

Here, the trial court determined that because the article was not prominent, *compare, Crowe, supra,* more harm would inure to the appellant by calling unwarranted attention to it.[2] The court commendably applied protective measures to temper any possible publicity by properly admonishing the jurors after empanelment and prior to the publication of the news article, by giving the jurors the statutory admonishment at every recess and prior to deliberation, and additionally by giving a jury instruction which included a directive that the jury was to be "governed solely by the evidence introduced at trial and the law as stated to you by me." *Cf.* Layton v. State, 91 Nev. 363, 536 P.2d 85 (1975). We query whether the foregoing is in all cases sufficient and conclude that it is not.

Ordinarily, as a pre-condition to appellate review, there must be a showing in the record that a member of the jury has been exposed to news media matter and has been influenced by it. United States v. Heffler, 270 F.Supp. 79 (E.D. Pa. 1967); United States v. Heffler, 402 F.2d 924 (3rd Cir. 1968); *cert. denied,* 394 U.S. 946. A polling of the jury, however, generally remains within the sound discretion of the trial court. *Crowe, supra; Marshall, supra;* People v. Lambright, 393 P.2d 409 (Cal. 1964).

It cannot be said in every case, however, that absent indications of violations of the court's admonishments refusal to voir dire the empaneled jury remains within the sound discretion of the trial court. The primary question is whether there has been an effect on the substantial rights of the accused. NRS 177.-255. The prejudice must be such that the customary polling procedures, admonitions, and instructions are unavailing to insure a fair trial. An examination of the facts must be made in order to determine whether prejudice resulted. *Crowe, supra;* Irvin v. Dowd, 366 U.S. 717 (1961). In some instances, of course, prejudice is inherent, Rideau v. Louisiana, 373 U.S. 723 (1963); Turner v. Louisiana, 379 U.S. 466 (1965), and

---

[2]Although appellant has not favored this Court with a copy of the news article, the record reflects that it was not prominent.

probability that prejudice will result is deemed inherently lacking in due process.

We perceive the difficulty in the trial courts' measuring of prejudice, and the issue is not whether the trial judge himself views an article as prejudicial as it is to determine whether the article tends to have a prejudicial effect on the jurors' minds. Accordingly, such determinations should not always be made in chambers with counsel, but in instances of doubt, the jury should be examined. *Crowe, supra.* This was, because of the nature of the article, arguably a case in which an instance of doubt existed, but, for reasons hereinafter expressed, we do not reach that issue nor need we conjecture as to whether prejudice occurred.

In the instant case, appellant had an opportunity to move for mistrial and press the issue or, in the alternative, to move for a new trial and renew his voir dire request. Appellant went no further than to request that the trial court voir dire the jury. Thereafter, he failed not only to move for mistrial but additionally failed to move for a new trial. Moreover, appellant failed to request additional admonitions or instructions. *Pacheco, supra.* Finally, there was not a scintilla of evidence offered in support of the request other than the article itself. On appeal appellant now seeks to demonstrate that the trial judge's refusal caused him prejudice. However, we have no means of determining whether a juror read the *Nevada State Journal* article or had been exposed to the harmful portion of the publication and whether it did interfere with appellant's right to a fair trial. More must be demonstrated for meaningful appellate review. Having failed to meet his burden of presenting an adequate record, appellant cannot now complain. *See,* Wangrow v. United States, 399 F.2d 106 (8th Cir. 1968), *cert. denied,* 393 U.S. 933; Black v. United States, 353 F.2d 885 (D.C. Cir. 1965), *cert. denied,* 384 U.S. 927.

Neither can we here say that "the issue of guilt or innocence is close," *Pacheco, supra,* at 179, 414 P.2d at 103–04. Even were we to determine that error occurred pertaining to the publicity, although the record before us would not permit such a conclusion, the evidence of guilt is so overwhelming that the assigned error would be deemed harmless. Passarelli v. State, 93 Nev. 292, 564 P.2d 608 (1977); Hendee v. State,

92 Nev. 669, 557 P.2d 275 (1976). *Cf.* Chapman v. California, 386 U.S. 18 (1967).

The judgment of conviction is affirmed.

BATJER, C. J., and THOMPSON, MOWBRAY, and GUNDERSON, JJ., concur.