STEVEN C. ABRAM, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 10151

May 10, 1979                                           594 P.2d 1143

*Morgan D. Harris,* Public Defender, and *Herbert F. Ahlswede,* Deputy Public Defender, Clark County, for Appellant.

*Richard Bryan,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *Nickolas Mastrangelo,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

Appellant Steven C. Abram, 21, was charged, tried by a jury and convicted of the first degree murder of Jean Douat, a man in his late sixties. From the judgment and sentence fixing his punishment at life imprisonment, Abram appeals.

*1. The facts.* On July 24, 1976, appellant became acquainted with Mr. Douat and was hired as a manager-bodyguard at Douat's apartment complex in Las Vegas. Appellant, his sister JoAnn, and his girlfriend Rosemary, had the previous day arrived in Las Vegas en route from Massachusetts.

The following morning, July 25, appellant was doing some work outside one of the apartments, and Douat was inside the unit removing a telephone left by a former tenant. When appellant finished what he had been doing, he entered the apartment. Douat was very upset because the tenant had vacated without notice. He became further enraged and started yelling when appellant questioned him as to whether he had made any sexual advances toward appellant's sister. An altercation ensued, resulting in the brutal killing of Douat. Appellant told JoAnn and Rosemary that he had killed the old man and said they

would all have to leave town immediately. Unable to start his car, appellant went to a tenant for assistance. The tenant testified appellant told him he "had done the old man in," that "he had taken his throat out," and that he "had been trained to do it." The tenant helped Abram start his car and appellant took flight to California.

An autopsy revealed the victim's death was the result of numerous cutting and stabbing wounds inflicted on the throat and chest. It further revealed that the larynx had been disrupted, that several rings of the trachea were fractured, and that other serious injuries were inflicted on the victim's head, scalp, chest and thighs. The examining physician testified that in his opinion none of the death causing injuries could be classified as defensive. Abram was for the most part uninjured.

Appellant, claiming self-defense, testified that the mortal wounds were inflicted during the course of a fight with the deceased. However, in light of the nature and extent of the wounds and the doctor's testimony that none of them were defensive in nature, it was permissible for the jury to reject appellant's claim of self-defense. See Porter v. State, 94 Nev. 142, 576 P.2d 275 (1978).

During trial, appellant objected to the testimony of Detective Maddock, the Las Vegas Metropolitan Police Department Officer who apprehended appellant and his companions in Barstow, California and returned them to Las Vegas for questioning. On re-direct examination, in response to the prosecutor's question: "Detective Maddock, when you say she [Rosemary] was involved, can you explain the meaning of your statement. . .", Maddock answered: "In talking with her, she appeared to be afraid of Steven Abram and that—." At that point, defense counsel objected on the grounds that the answer was not responsive and that the testimony was unduly prejudicial. While the trial judge agreed that the answer was not responsive, he denied appellant's motion for mistrial. Appellant ignored the prosecutor's suggestion of a motion to strike, and no cautionary or limiting instruction was given.

Abram subsequently renewed his motion for mistrial when inmate Victor Janway, who met appellant in the Clark County Jail in August, 1976, testified that "[a]t the time, you know, when he [Abram] was upset he found out she [Rosemary] was turning State's evidence against him. He complained he was going to get her too. He said he was going to get to her somehow. And he said everything would have been all right if she would have kept her mouth shut." With regard to Rosemary's

child, Janway testified: "He said she would never see the child again." Appellant objected and moved for a mistrial on the basis that the testimony was unduly prejudicial. The trial court, concluding the evidence was relevant to the issue of the consciousness of guilt, denied appellant's motion for mistrial.

2. *The issue.* On this appeal, Abram does not challenge the sufficiency of the evidence. Rather, he complains the trial court's refusal to grant his motions for mistrial was reversible error. The broad issue before us is whether the trial court properly denied appellant's motions. Appellant contends that the testimonial evidence of Maddock and Janway was inadmissible and so prejudicial as to dictate a new trial.

Appellant complains the objected to testimony of detective Maddock (that Rosemary was afraid of appellant) and Victor Janway (that appellant said he would "get to" Rosemary and her child) was unduly prejudicial and irrelevant to any issue in the case. NRS 48.015; 48.025(2); 48.035(1).

The state argues that the evidence tends to show a consciousness of guilt on the part of the appellant and that in any event, any prejudice could have been cured by means less drastic than the declaration of a mistrial, namely, by a motion to strike and cautionary instruction to the jury. *Cf.* Lingo v. State, 94 Nev. 615, 584 P.2d 681 (1978).

The granting or denial of a motion for mistrial lies within the sound discretion of the trial court and its determination will not be disturbed on appeal in the absence of a clear showing of abuse. See Leaders v. State, 92 Nev. 250, 548 P.2d 1374 (1976); People v. Lankford, 524 P.2d 1382 (Colo. 1974). Normally, error may not be predicated upon a ruling admitting evidence unless a substantial right of the accused is affected and a timely objection or motion to strike stating the specific ground of objection appears of record. NRS 47.040(1)(a). Here, the objections were sufficient to preserve the issues raised on appeal.

3. *The officer's statement.* Detective Maddock's comment was not relevant to any issue in the case. Maddock's testimony implied that appellant had done something to cause Rosemary to be apprehensive of him. Thus, the detective's testimony was highly prejudicial. Absent some substantial connection between the detective's comments and the state's theory of the case, the trial judge should have excluded the evidence. NRS 48.025(2); see State v. Sanders, 489 P.2d 371 (Mont. 1971); State v. Flett, 380 P.2d 634 (Ore. 1963). Police officers, in particular,

should be instructed as to what is, and what is not, competent evidence and be forbidden by their superiors from injecting incompetent and prejudicial testimony into evidence which results in reversals of convictions and defeats the ends of justice. [Citations omitted.]

Sandersfield v. State, 461 P.2d 1019, 1020 (Okla.Crim.App. 1969). Although the trial judge recognized that evidence of appellant's character was simply not appropriate in the state's case in chief, he denied appellant's motion for mistrial.

We must now determine whether admission of the evidence was so prejudicial that it requires reversal. NRS 177.255 and 178.598 refer to errors which do not affect the substantial rights of the accused. See also NRS 47.040(1)(b). We query whether exclusion of the prejudicial testimony would have changed the result of the trial. In our view of the record, had the comment not been made, it is apparent that the same result would have been reached. Elsbury v. State, 90 Nev. 50, 518 P.2d 599 (1974). It gives us solace that this was not a case in which the question of guilt or innocence is a close one. Indeed, the evidence is truly overwhelming. See Arndt v. State, 93 Nev. 671, 572 P.2d 538 (1977); Coffman v. State, 93 Nev. 32, 559 P.2d 828 (1977).

Our examination of the record to determine the probable impact of the testimony on the minds of the jury, Harrington v. California, 395 U.S. 250 (1969), leads us to the inescapable conclusion that the error in admitting detective Maddock's testimony was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 20 (1967).

*4. The inmate's testimony.* Victor Janway's testimony that appellant told him that he was "going to get to" Rosemary and her child for turning state's evidence against him, was objected to as irrelevant and unduly prejudicial. The objection was overruled.

It is sometimes relevant to show that an accused has threatened a witness with violence. 1 Wharton's Criminal Evidence, 13th ed. § 217 (1972); and see State v. Hill, 221 A.2d 725 (N.J. 1966). Although the evidence of appellant's threats against the witness and her child were highly inflammatory, and were not communicated to her, the trial court admitted the evidence as relevant to Abram's consciousness of guilt.

Declarations made after the commission of the crime which indicate consciousness of guilt, or are inconsistent with innocence, or tend to establish intent may be admissible. See State v. Rechtschaffer, 360 A.2d 362 (N.J. 1976). Here, Abram's

statements to his fellow inmate were clearly relevant to the question of guilt. See State v. Mason, 394 S.W.2d 343 (Mo. 1965); People v. Bloom, 18 N.E.2d 197 (1938). The trial judge, fully cognizant of the prejudicial impact, nevertheless denied Abram's motion for a mistrial. We decline to overrule that discretionary ruling.

Appellant was entitled to a fair trial, but not a perfect one. Revuelta v. State, 86 Nev. 587, 472 P.2d 343 (1970). Here, there is nothing to suggest that appellant's due process rights were violated.

The conviction is affirmed.

MOWBRAY, C. J., and THOMPSON and BATJER, JJ., concur.

GUNDERSON, J., dissenting:

I respectfully dissent.

My colleagues note that "the detective's testimony was highly prejudicial." However, they say: "It gives us solace that this was not a case in which the question of guilt or innocence is a close one." Of course, this is quite true, in the sense that appellant may clearly have been guilty of something. Still, it remains unclear whether appellant committed first-degree murder, second-degree murder, or manslaughter. Because of highly prejudicial testimony elicited from Detective Maddock—and, I believe, other inflammatory evidence improperly elicited from Victor Janway—appellant was deprived of a fair trial concerning the *degree* of guilt.

As a reading of the majority opinion will show, conflicting inferences might well be drawn from the proper and probative evidence, regarding appellant's state of mind at the time of the killing. From the testimony legitimately before the court, issues such as premeditation, or heat of passion, could be seriously debated. Thus, it seems to me quite possible—indeed probable—that the improper, admittedly "highly prejudicial" evidence colored the jury's determination of these central issues.