**STATE of Utah, Plaintiff and Respondent,**

v.

**Anne CLARK and Allan Savage, Defendants and Appellants.**

**No. 17739.**

Supreme Court of Utah.

Nov. 15, 1983.

Ronald J. Yengich, Salt Lake City, for defendants and appellants.

David L. Wilkinson, Atty. Gen., Robert N. Parrish, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

The appellants and defendants, Anne Clark and Allan Savage, appeal their convictions for the offense of aggravated arson, U.C.A., 1953, § 76–6–103. The evidence presented at trial indicated that the firemen called to Clark's home at 1:06 a.m. observed circumstances, such as fire springing up directly from a concrete floor and empty Coleman fuel cans, which suggested that fire accelerant had been used. Two fire and explosion experts investigated the fire and testified that the fire was probably started by the furnace pilot light igniting a flammable petroleum product which had been poured on the side of the furnace and spread on the floor with a

broom. The two experts and a Mountain Fuel Company investigator also ruled out malfunction of the furnace or the water heater as sources of the fire. They and a licensed electrical contractor also testified that the electrical wiring in the house was not the cause of the fire. There was conflicting testimony by the defendants regarding the events prior to the fire. At different times and to different persons, the defendants stated that Clark's son was or was not present, that they could or could not smell gas in the house, and that the defendants were or were not in the basement of the house when the fire started. The legs of both defendants were burned.

In this appeal, the defendants allege five points of error: (1) that they were improperly convicted of arson because the structure burned was the property of the defendant Clark; (2) that the prosecution failed to comply with an agreement not to prosecute if the defendants passed a polygraph examination; (3) that the court erroneously denied the defendants' motion to voir dire the jury regarding potentially prejudicial trial publicity; (4) that the court failed to follow the requirements of Utah R.Crim.P. 17(f) & (h) (codified at U.C.A., 1953, §§ 77-35-17(f) & (h) (Interim Supp. 1982)); and (5) that there was insufficient evidence to support a conviction. We hold that the defendants' arguments are without merit and affirm the judgment of the trial court.

■ The defendants first argue that in order to be found guilty under U.C.A., 1953, § 76-6-103, a person must have damaged the property of another. The statute reads as follows:

(1) A person is guilty of aggravated arson if by means of fire or explosives he intentionally and unlawfully damages:
  (a) A habitable structure; or
  (b) Any structure or vehicle when any person not a participant in the offense is in the structure or vehicle.
(2) Aggravated arson is a felony of the second degree.

The question of whether the statute excludes damage to one's own property was addressed in *State v. Durant*, Utah, 674 P.2d 638 (1983). In that decision we held that in order to protect lives, the Legislature intended to proscribe damage by fire or explosives to any *habitable* structure where persons may be found or *any* structure where persons actually are found, regardless of habitability. We observed that "property of another" was specified in two other arson statutes and concluded that if the Legislature had intended to exclude damage to one's own property from the offense, the statute would have contained that explicit exception. We therefore hold that in the instant case the defendants could be convicted of aggravated arson and that the trial court did not err in refusing to dismiss the charges against them.

■ Second, the defendants claim that the prosecution refused to comply with an agreement not to prosecute if the defendants passed a lie detector test. In a letter to Clark's attorney, the Summit County Attorney wrote that if either defendant "can successfully pass a polygraph examination," he would not file criminal charges. Clark subsequently took a polygraph examination which was inconclusive. The examiner wrote:

Opinion analysis of the polygraph charts indicate[s] that the results numerically scored are inconclusive. Due to the fact that the polygraph examination came out in the inconclusive range, it is impossible for this examiner to render an opinion as to whether or not Mrs. Clark was involved in the fire as accused.

The rule in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), states that "when a plea rests in any significant degree on a promise or agreement of the prosecutor so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* 404 U.S. at 262, 92 S.Ct. at 499. However, in *State v. Bero*, Utah, 645 P.2d 44 (1982), we ruled that when a prosecutor has made no promise or when the prosecutor and the defendant have not reached a clear agreement, the *Santobello* rule does not apply. In the instant case, the prosecu-

tor agreed not to file charges only if the test was *passed* by the defendants. The prosecutor was under no obligation when Clark's test was in the inconclusive range since no agreement had been reached with regard to inconclusive results. Therefore, the prosecution was not obligated to comply with its promise not to file charges, and the trial court did not err in denying Clark's motion to dismiss.

■ The defendants next assert that the trial court erred in refusing to voir dire the jury regarding a newspaper article about the trial. It is well recognized that newspaper and other media accounts of a court proceeding may have an effect prejudicial to a defendant's constitutional right to a trial by an impartial jury. However, circumstances vary widely and it cannot be said that every news story endangers a defendant's rights. The defendants cite several cases in which the reviewing court reversed the lower court's refusal to conduct voir dire to ascertain the effects of news articles. *See, e.g., United States v. Trapnell,* 638 F.2d 1016 (7th Cir.1980); *Crowe v. State,* 84 Nev. 358, 441 P.2d 90 (1968); *State v. Clay,* 7 Wash.App. 631, 501 P.2d 603 (1972). Each of these cases dealt with the publication of material which was *inherently prejudicial* to the defendant, such as previous prosecutions, excluded evidence or the guilty pleas of codefendants. The present case does not involve inherently prejudicial publicity. The defendants characterize the newspaper article in question as *potentially* prejudicial. The State cites the rule that where publicity is not inherently prejudicial the burden is on the defendant to establish that the jurors were exposed to the publicity and that they were actually prejudiced by it in order to set aside a conviction. *See, e.g., Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *United States v. Gigax,* 605 F.2d 507 (10th Cir.1979). These cases, however, and others cited by the State, deal primarily with the effects of pretrial publicity and its impact on jurors and the jury selection process. In cases where pretrial publicity is in question, the defendant has the opportunity to voir dire the jurors in the process of empanelling the jury or to object to the manner in which the court does so. In these cases, where there is a record of the jurors' responses, it is reasonable to require that the defendant must show actual exposure to the potentially prejudicial matter and an actual prejudicial effect. In cases such as the present one, however, where the publicity takes place during the trial, the defendant cannot ever show actual exposure or prejudicial effect unless the court allows the jury to be polled.

In *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), the Supreme Court stated:

> Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. And appellate tribunals have the duty to make an independent evaluation of the circumstances.

*Id.* at 362, 86 S.Ct. at 1522.

■ In *Arndt v. State,* 93 Nev. 671, 572 P.2d 538 (1977), the Supreme Court of Nevada pointed out that although the polling of a jury is within the sound discretion of the court, where a judge refuses to voir dire an empanelled jury regarding potentially prejudicial publicity during trial, it is appropriate for the appellate court to examine the facts to determine whether the rights of the accused have been prejudiced. *Id.* at 675–76, 572 P.2d at 541. We agree with this analysis. At the same time, we emphasize that many news items published about a trial are not even *potentially* prejudicial to the defendant. A trial judge is not required to poll the jury every day regarding all media treatment of the trial. Such a procedure could, in fact, work to a defendant's disadvantage by annoying the jurors and creating an atmosphere of suspicion and distrust. Therefore, we hold that when requested by counsel to poll the jury

regarding publicity during the trial, the trial court must rule as a matter of law whether the publicity is potentially prejudicial or not prejudicial at all. If the publicity is potentially prejudicial, then the court must question the jurors regarding their exposure and their understanding of it. If it is not, then the trial court is correct in refusing to poll the jury.

■ In the instant case, at the close of the State's case the attorneys for the defendants presented a motion for dismissal due to insufficient evidence to the court outside of the presence of the jury. Subsequently, while the trial was continued during a juror's illness, a news article appeared in a local paper. The relevant portion of that article stated:

Judge Leary adjourned Friday after taking under advisement motions for dismissal made by the two defense attorneys ....

. . . . .

Attorneys ... contended that since the cause of the fire is not yet determined it must be assumed to be of accidental origin. They both contend in making their motions for dismissal that the mere presence of the defendants at the scene is not presumptive of guilt.

Because the trial did continue following the motions, the defendants claim that any juror who happened to read the article could have concluded that the motions were denied because the judge believed the defendants to be guilty. The article makes no mention, however, of a denial of the defendants' motions or of sufficiency of the evidence. It expresses no opinion or conclusion but is a straightforward, dispassionate report of the proceedings. It would take very careful reading and a sophisticated knowledge of law and trial procedure for a juror to draw the inferences which the defendants suggest. If the article had stated that the judge denied a motion to dismiss because of insufficiency of evidence, there might be grounds for suspecting potential prejudice. As it is, we hold that the article was not even potential-

ly prejudicial and that the trial court did not err in refusing to poll the jury.

■ In their fourth point, the defendants allege that the trial court failed to comply with Rule 17 of the Rules of Criminal Procedure. In pertinent part, the rule states:

(f) In all cases the prosecution and defense may, with the consent of the accused and the approval of the court, by stipulation in writing or made orally in open court, proceed to trial or complete a trial then in progress with any number of jurors less than otherwise required.

. . . . .

(h) If a juror becomes ill, disabled or disqualified during trial and an alternate juror has been selected, the case shall proceed using the alternate juror. If no alternate has been selected, the parties may stipulate to proceed with the number of jurors remaining. Otherwise, the jury shall be discharged and a new trial ordered.

Utah R.Crim.P. 17(f) & (h) (codified at U.C.A., 1953, § 77–35–17(f) & (h) (Interim Supp.1982)). The defendants claim that when one of the jurors became ill during the trial the court was obligated to obtain the consent of the parties to proceed with the remaining jurors or to discharge the jury and order a new trial. The defendants contend that the trial court's decision to continue the trial until the juror's recovery was contrary to procedure mandated by the statute and was prejudicial to their rights. We disagree for two reasons. First, it is well known that the decision to continue a trial is within the trial court's discretion. *See, e.g., State v. Creviston,* Utah, 646 P.2d 750 (1982). The defendants' reading of the statute would remove that discretion and make it mandatory to obtain the parties' consent to a smaller jury or to order a new trial no matter how brief or trifling a juror's absence. The reasonable intention of the Legislature was to provide a means by which a trial might proceed if one of the jurors became ill or unavailable permanently or for an extended period. This is not such a case. The trial court continued the

trial for one week while a juror recovered from chicken pox. Second, the defendants made no objection to the continuance at the time of trial and cannot now be heard to complain of prejudice to their rights in order to get a second chance with a different jury. *See, e.g., Bangerter v. Poulton,* Utah, 663 P.2d 100 (1983); *State v. Steggell,* Utah, 660 P.2d 252 (1983).

■ Finally, the defendants complain that there was insufficient evidence to support their conviction of aggravated arson. They allege that their mere presence at the fire is not presumptive of guilt. On numerous occasions we have stated:

> This Court will not lightly overturn the findings of a jury. We must view the evidence properly presented at trial in the light most favorable to the jury's verdict, and will only interfere when the evidence is so lacking and insubstantial that a reasonable man could not possibly have reached a verdict beyond a reasonable doubt. *State v. Asay,* Utah, 631 P.2d 861 (1981); *State v. Lamm,* Utah, 606 P.2d 229 (1980); *State v. Gorlick,* Utah, 605 P.2d 761 (1979); *State v. Logan,* Utah, 563 P.2d 811 (1977). We also view in a light most favorable to the jury's verdict those facts which can be reasonably inferred from the evidence presented to it.

*State v. McCardell,* Utah, 652 P.2d 942, 945 (1982). The State presented uncontroverted evidence that accelerants had been used to create the explosion and fire, that Clark had recently had an engineer inspect her house because of some cracks in the foundation, and that the defendants were present and had been burned in the fire. The defendants' contradictory and confusing accounts of their actions offer no reasonable explanation for the fire. We cannot say that the evidence is so lacking and insubstantial that a reasonable man could not possibly have reached a verdict beyond a reasonable doubt.

Therefore, judgment of the trial court is affirmed.

OAKS and HOWE, JJ., concur.

STEWART, Justice (dissenting):

I dissent for the same reasons stated in my dissent in *State v. Durant,* Utah, 674 P.2d 638 (1983). The trial court found that the setting of the fire was intentional. There is nothing to indicate, however, that the fire was set for an "unlawful" purpose as required by the aggravated arson statute, U.C.A., 1953, § 76–6–103(1).

HALL, C.J., concurs in the dissenting opinion of STEWART, J.