2013 UT App 170

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
PHILIP VICTOR DAUGHTON,
Defendant and Appellant.

Memorandum Decision
No. 20110276-CA
Filed July 11, 2013

Fifth District, St. George Department
The Honorable Eric A. Ludlow
No. 081501831

Gary G. Kuhlmann and Nicolas D. Turner,
Attorneys for Appellant
John E. Swallow and Jeffrey S. Gray, Attorneys for
Appellee

JUDGE CAROLYN B. MCHUGH authored this Memorandum
Decision, in which JUDGES GREGORY K. ORME and JAMES Z. DAVIS
concurred.

McHUGH, Judge:

¶1     Philip Victor Daughton appeals from his convictions and
sentences for sodomy on a child, a first degree felony, *see* Utah
Code Ann. § 76-5-403.1(1)–(2) (LexisNexis 2008),[1] sexual abuse of
a child, a second degree felony, *see id.* § 76-5-404.1(2)–(3), and
lewdness involving a child, a class A misdemeanor, *see id.* § 76-9-

---

1. Unless otherwise noted, throughout this memorandum decision
we cite the 2008 version of the Utah Code, which reflects the
version in effect at the time Daughton was charged.

702.5(1), (2)(a). We affirm Daughton's convictions, but we vacate the trial court's sentencing order and remand for further sentencing proceedings.

¶2     Daughton's three convictions stem from sexual abuse that he committed against a child (Child) in Washington, Utah, on a single day in 2002. Daughton was charged on October 23, 2008, shortly after Child first reported the abuse to authorities. Before trial, Daughton moved to suppress certain evidence involving allegations of other acts. The trial court granted this motion and ruled that any evidence regarding or alluding to allegations of other misconduct would be excluded at trial pursuant to the Utah Rules of Evidence.

¶3     On January 19, 2011, an eight-member jury was selected but not sworn. Before the jury was excused and before the court adjourned for the day, the trial court advised the jury members, stating,

> It's absolutely necessary that you remain fair and impartial during this trial. Maintain an open mind until the evidence and arguments are completed. During this recess and every break in this trial, do not discuss this case with anyone or amongst yourselves. Do not allow anyone to discuss the case in your presence. Do not talk to or communicate with me or any other participant in this trial.

¶4     The following day, a local newspaper, *The Spectrum*, published an article (the Article) containing information excluded by the trial court's order. When proceedings resumed that same day, the trial court polled each juror individually in chambers to discern whether anyone had read the Article. Only one juror, Juror 18, indicated that she had read some of *The Spectrum* that morning. When the trial court sought clarification and asked Juror 18 if she "read anything pertaining to this case," Juror 18 responded, "Absolutely not."

¶5     After questioning each juror, the trial court brought three jurors, including Juror 18, into chambers to ask a follow-up question. The trial court explained to these three jurors, "You have indicated you have not read this morning's newspaper." The trial court then asked these jurors if they had spoken to anyone who had read *The Spectrum*. Juror 18 replied, "No one."

¶6     The trial court concluded, "The record shall reflect that we have now individually spoken to each of the eight jurors. None of them have read this morning's [*The Spectrum*] newspaper." Nevertheless, Daughton's trial counsel moved to dismiss the jury and set another trial date, arguing that the questions posed to the jurors imply that "there is an article in [*The Spectrum*] that's derogatory to [Daughton]." The trial court denied the motion, noting that the jury might just as reasonably infer that *The Spectrum* reported that the allegations against Daughton are false. The trial court stated, "I'm satisfied that from what the jurors have told me that they have not read the article. So I do not believe they have been tainted." Trial counsel did not object to the thoroughness of the trial court's examination of the jurors or request that they be asked additional questions concerning the Article.

¶7     Upon returning to open court, the jury was sworn and the trial proceeded. The jury convicted Daughton on all three counts. The trial court sentenced Daughton to an indeterminate prison term of twenty-five years to life for the crime of sodomy on a child, a prison term of one to fifteen years for the crime of sexual abuse of a child, and one year in prison for the crime of lewdness involving a child. The trial court ordered the first two felony sentences to be served consecutively and the sentence for the misdemeanor to be served concurrently. Daughton timely appeals from his convictions and sentences.

¶8     First, Daughton concedes that trial counsel did not preserve the issue but argues that the trial court committed plain error by failing to adequately poll the jury regarding inherently prejudicial publicity. "[I]n general, appellate courts will not consider an issue,

including constitutional arguments, raised for the first time on appeal unless the trial court committed plain error or the case involves exceptional circumstances." *State v. Dean*, 2004 UT 63, ¶ 13, 95 P.3d 276. "To demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the [defendant]." *Id.* ¶ 15 (citation and internal quotation marks omitted). "If any one of these requirements is not met, plain error is not established." *Id*. (citation and internal quotation marks omitted).

¶9 Daughton argues that the trial court erred because it did not adequately question Juror 18. Although the State concedes that the Article discussed excluded evidence and was inherently prejudicial, it contends that the trial court's questioning of the jury was sufficient to ensure that the jury was not tainted.

¶10 In *State v. Clark*, 675 P.2d 557 (Utah 1983), the Utah Supreme Court instructed that "when requested by counsel to poll the jury regarding publicity during the trial, the trial court must rule as a matter of law whether the publicity is potentially prejudicial or not prejudicial at all." *Id*. at 560–61. "If the publicity is potentially prejudicial, then the [trial] court must question the jurors regarding their exposure and their understanding of it." *Id*. at 561. The supreme court also explained that the publication of excluded evidence falls in the category of inherently prejudicial publicity. *Id.* at 560.

¶11 In this case, both parties agree that the Article was inherently prejudicial to Daughton because it contained information specifically excluded by the trial court. Because of the risk of prejudice that could result from the jury's exposure to the Article, the trial court questioned each juror individually in camera with counsel present. Only one juror, Juror 18, indicated that she had read *The Spectrum* that morning. The trial court's complete interview of Juror 18 proceeded as follows,

THE COURT: [Juror 18], let me ask, today, prior to coming to court, did you by any chance read *The Spectrum* newspaper?

[JUROR 18]: I did.

THE COURT: Okay. Was there anything that you—

[JUROR 18]: Absolutely. I didn't see anything. I saw that (inaudible) something. I didn't read the whole thing.

THE COURT: Okay.

[JUROR 18]: I was trying to think.

THE COURT: Did you read anything pertaining to this case?

[JUROR 18]: Absolutely not.

THE COURT: All right. [Juror 18], I am going to have you go back in the jury room with my bailiff. Please do not discuss anything that we have discussed in here. . . .

. . . .

THE COURT: Just a follow-up question. You have indicated you have not read this morning's newspaper. Have you spoken to anyone who has read *The Spectrum* newspaper?

[JUROR 18]: No one.

¶12    Daughton argues that Juror 18's "responses to the trial court's polling questions are contradictory" and therefore "it

should have been obvious to the trial court that it needed to ask [Juror 18] to clarify her contradictions regarding her exposure to the article in question." In particular, Daughton asks us to infer from the inaudible portion[2] of Juror 18's response that Juror 18 had read some potentially relevant information and that the trial court should have inquired further into the specific material that Juror 18 had seen.

¶13    However, a fair reading of the transcript indicates that Juror 18 admitted to having read parts of *The Spectrum* that morning. When the trial court began further questioning, Juror 18 stated, "Absolutely. I didn't see anything. I saw that (inaudible) something. I didn't read the whole thing." Although this statement is confusing as to whether Juror 18 read some part of the Article, the trial court continued its examination by asking directly, "Did you read anything pertaining to this case?" Juror 18 unequivocally responded, "Absolutely not." Thus, despite the initial confusion, the trial court adequately inquired and clarified that Juror 18 had not been exposed to the prejudicial publicity. The trial court was in the best position to assess the truthfulness of Juror 18's statement

---

2. Daughton did not move to supplement the record in order to clarify the inaudible statement of Juror 18. *See generally* Utah R. App. P. 11(h) ("If anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation, the trial court, or the appellate court, either before or after the record is transmitted, may direct that the omission or misstatement be corrected and if necessary that a supplemental record be certified and transmitted."). "We generally assess as negligible the damage caused by missing testimony that contradicts other testimony . . . ." *State v. Gardner*, 2007 UT 70, ¶ 23, 167 P.3d 1074. Additionally, defendants on direct appeal bear the burden of assuring the record is adequate, *see State v. Litherland*, 2000 UT 76, ¶ 16, 12 P.3d 92, and the missing portions of a record are presumed to support the action of the trial court, *State v. Theison*, 709 P.2d 307, 309 (Utah 1985) (per curiam).

that even though she had read some of *The Spectrum* that day, she had not read the Article related to Daughton's case. *See Hale v. Big H Constr., Inc.*, 2012 UT App 283, ¶ 16, 288 P.3d 1046 ("Assessing the credibility of a witness is within the trial court's domain."). Indeed, we "presum[e] that the trial judge, having personally observed the quality of the evidence, the tenor of the proceedings, and the demeanor of the parties, is in a better position to perceive the subtleties at issue than we can looking only at the cold record." *State v. Calliham*, 2002 UT 86, ¶ 23, 55 P.3d 573. Furthermore, although the transcriber was unable to understand all of Juror 18's response to one of the trial court's questions, it may have been audible to the court and counsel at the time. Nevertheless, both the court and counsel were satisfied that Juror 18 had not read the Article.

¶14    The trial court adequately performed its duty under *State v. Clark*, 675 P.2d 557 (Utah 1983), to poll the jury regarding the Article.[3] *See id*. at 560–61. Hence, Daughton has not demonstrated plain error because the trial court did not err. *See State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276 ("If any one of the[] requirements [of plain error] is not met, plain error is not established." (citation and internal quotation marks omitted)).

¶15    Next, Daughton claims that he was denied his constitutional right to the effective assistance of counsel. "An ineffective

---

3. We are equally unpersuaded by Daughton's suggestion that the trial court was required to dismiss the jury because the trial court's questioning prejudiced the jury by implying that *The Spectrum* reported material harmful to Daughton. Even if the trial court had released these particular jurors because the Article included inherently prejudicial information, another jury selection process inevitably would require a similar inquiry into whether the new panel of potential jurors had been exposed to the Article or other media related to Daughton's case. *See State v. Clark*, 675 P.2d 557, 560–61 (Utah 1983). Moreover, Daughton does not directly challenge the denial of his motion to dismiss the jury on appeal.

assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Ott*, 2010 UT 1, ¶ 16, 247 P.3d 344 (citation and internal quotation marks omitted). In order to establish that he was deprived of his Sixth Amendment right to effective assistance of counsel, Daughton must establish "(A) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (B) that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *See State v. Hales*, 2007 UT 14, ¶ 68, 152 P.3d 321 (citation and internal quotation marks omitted); *see also Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "For this court to hold that counsel acted in an objectively deficient manner, we must be persuaded that there was a lack of any conceivable tactical basis for counsel's actions." *State v. Phillips*, 2012 UT App 286, ¶ 11, 288 P.3d 310 (citation and internal quotation marks omitted). We "will not second-guess trial counsel's legitimate strategic choices, however flawed those choices might appear in retrospect." *State v. Tennyson*, 850 P.2d 461, 465 (Utah Ct. App. 1993) (citing *Strickland*, 466 U.S. at 689).

¶16    Daughton asserts that his trial counsel performed deficiently by failing to request that the trial court further question Juror 18 in order to assess whether she was exposed to inherently prejudicial material. This claim relies on his assertion that the trial court's polling of the jury was inadequate. But as we have already determined, the trial court's polling of the jury was sufficiently thorough to establish that the jurors, including Juror 18, had not read the Article. *See supra* ¶¶ 13–14. Consequently, Daughton's trial counsel did not perform deficiently. *See State v. Whittle*, 1999 UT 96, ¶ 34, 989 P.2d 52 ("[T]he failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." (alteration in original) (citation and internal quotation marks omitted)). Likewise, because we defer to the trial court's assessment that Juror 18 truthfully reported that she did not read the Article, Daughton cannot establish prejudice. *See Strickland*, 466 U.S. at 700 ("Failure to make the required showing

of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").

¶17    Moreover, Daughton's trial counsel may have had a tactical reason for not asking for additional examination of the jurors. In *Clark*, the Utah Supreme Court explained that polling the jury every day regarding all media treatment of the trial would be a procedure that "could, in fact, work to a defendant's disadvantage by annoying the jurors and creating an atmosphere of suspicion and distrust." *See Clark*, 675 P.2d at 560. Indeed, trial counsel here expressed concern that "the very question [whether they had read *The Spectrum*] indicates and probably implies to them they could infer that there is an article in there that's derogatory to [Daughton]." We cannot say that trial counsel lacked a conceivable basis for not requesting that the trial court make further inquiry regarding the Article. Thus, Daughton cannot show that his trial counsel performed deficiently and, as a result, cannot establish ineffective assistance of counsel. *See Strickland*, 466 U.S. at 700.

¶18    Finally, Daughton challenges the trial court's sentencing decisions. "The trial court has substantial discretion in conducting sentencing hearings and imposing a sentence, and we will in general overturn the trial court's sentencing decisions only if we find an abuse of discretion." *State v. Patience*, 944 P.2d 381, 389 (Utah Ct. App. 1997) (citations omitted). "However, a sentence that is beyond the authorized statutory range constitutes an illegal sentence that may be corrected at any time." *State v. Bryant*, 2012 UT App 264, ¶ 9, 290 P.3d 33 (citation and internal quotation marks omitted); *see also State v. Thorkelson*, 2004 UT App 9, ¶ 15, 84 P.3d 854 ("A 'patently' or 'manifestly' illegal sentence generally occurs in one of two situations: (1) where the sentencing court has no jurisdiction, or (2) where the sentence is beyond the authorized statutory range.").

¶19    On appeal, Daughton argues that the trial court erred when it "failed to give adequate weight to . . . mitigating factors" in sentencing him to consecutive, rather than concurrent, terms.

Specifically, Daughton contends that the trial court gave inordinate weight to Child's comments when it imposed consecutive sentences. In response, the State concedes that resentencing is required, but for a different reason. The State calls our attention to the fact that "the trial court imposed the incorrect statutory sentence for sodomy on a child."[4]

¶20    When the Legislature alters the penalty for a crime after a defendant has allegedly committed the crime but before sentencing, the new statute—the one in effect at the time of sentencing—is applied so long as "it does not raise a Constitutional question of being an ex post facto law by reason of increasing the punishment."

*State v. Dominguez*, 1999 UT App 343, ¶ 11, 992 P.2d 995 (quoting *Belt v. Turner*, 483 P.2d 425, 426 (Utah 1971)); *see also* U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law . . . ."); Utah Const. art. I, § 18 ("No . . . ex post facto law . . . shall be passed."). "An ex post facto law is one . . . which makes more burdensome the punishment for a crime, after its commission . . . ." *Monson v. Carver*, 928 P.2d 1017, 1026 (Utah 1996) (citation and internal quotation marks omitted). Because of this constitutional concern, when "[an] amendment increases the punishment" for an offense between the time of the crime's commission and the time of sentencing, "the sentence should be determined according to the law in effect on the date the crime was committed." *Dominguez*, 1999 UT App 343, ¶ 11.

¶21    At the time Daughton committed the offenses in 2002, twenty-five years to life in prison was not a sentencing option for the crime of sodomy on a child. Rather, the Utah Code provided

---

4. We commend the State's counsel for his professionalism and candor in raising this important issue and conceding that the sentence is illegal.

that the crime was "punishable by imprisonment for an indeterminate term of not less than 6, 10, or 15 years and which may be for life." Utah Code Ann. § 76-5-403.1(2) (LexisNexis 1999). The Utah Legislature subsequently amended the sentencing options for this crime. As a result, when Daughton was charged in 2008, section 76-5-403.1 had been amended to increase the punishment for this crime to "not less than 25 years and which may be for life." *See id.* § 76-5-403.1(2)(a) (2008). The trial court's imposition of the 2008 sentencing option of twenty-five years to life exceeds the statutory range permitted in 2002 and constitutes "an impermissible ex post facto application of law in regard to" Daughton. *See Bryant*, 2012 UT App 264, ¶ 16. Accordingly, the trial court erred when it applied the 2008 version of Utah Code section 76-5-403.1 to sentence Daughton to twenty-five years to life for a crime he committed in 2002.[5]

¶22    In sum, the trial court did not err and Daughton's trial counsel was not ineffective because the jury was adequately polled regarding the Article. We therefore affirm Daughton's convictions. However, we vacate Daughton's sentence for sodomy on a child and remand for resentencing in accordance with the statute in effect when Daughton committed the offenses in 2002.

¶23    Affirmed, in part, and reversed and remanded, in part.

———————

5. Because we remand for resentencing due to the imposition of an illegal sentence, we need not reach the merits of Daughton's argument that the trial court exceeded its discretion in ordering consecutive sentences. In determining whether to impose concurrent or consecutive sentences on remand, the trial court "shall consider the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of [Daughton]." *See* Utah Code Ann. § 76-3-401(2) (LexisNexis 2012).