2011 UT App 154

**STATE of Utah, Plaintiff and Appellee,**

v.

**Bryan FEATHERHAT, Defendant and Appellant.**

No. 20090387–CA.

Court of Appeals of Utah.

May 12, 2011.

J. Bryan Jackson, Cedar City, for Appellant.

Mark L. Shurtleff and Kris C. Leonard, Salt Lake City, for Appellee.

Before Judges McHUGH, THORNE, and CHRISTIANSEN.

## OPINION

THORNE, Judge:

¶ 1 Bryan Featherhat appeals from his convictions on one count of attempted aggravated murder, *see* Utah Code Ann. §§ 76–4–101 (2008), 76–5–202 (Supp.2010), and one count of aggravated robbery, *see id.* § 76–6–302 (2008). We affirm.[1]

## BACKGROUND

¶ 2 On January 5, 2007, Featherhat's truck became stuck in the snow along a highway in Iron County. Featherhat's cousin, Christine Tallman, happened upon Featherhat and his vehicle and stopped to offer assistance. At the time, Tallman and her three children were passengers in an SUV owned and driven by her boyfriend, Pedro Hinojosa. Featherhat asked Tallman and Hinojosa for help in pulling his truck out of the snow, and the group chained the two vehicles together and began attempting to free Featherhat's truck.

¶ 3 Shortly thereafter, Officer Jason Thomas arrived on the scene. As Officer Thomas was investigating his suspicions that Featherhat was driving under the influence of alcohol and with an expired registration, Featherhat retrieved a pistol-gripped 12–gauge shotgun from his truck. Featherhat approached Officer Thomas with the shotgun, stated that Thomas would not take him to jail, and fired the shotgun at Thomas.

¶ 4 The shotgun blast struck Officer Thomas but failed to penetrate his protective vest. Officer Thomas, believing that he should not

---

1. Although Featherhat committed his crimes in 2007, we cite to the current versions of the relevant statutes as a convenience to the reader.

return fire due to the presence of Tallman and the children, ran for cover as Featherhat fired twice more, striking Thomas in the back and head. Featherhat then approached Tallman with the shotgun in his hands and demanded that she drive him away in Hinojosa's SUV. When Tallman turned and ran, Featherhat unhooked the chain from the SUV and fled in it.

¶ 5 Featherhat later abandoned the SUV and was picked up by the police while walking along a highway at about 4:00 a.m. the next morning. The police took Featherhat, who was extremely cold and shivering violently, to the police station for interrogation. Detective Mike Bleak provided Featherhat with a blanket and some hot chocolate, and Featherhat eventually warmed up enough to talk. Detective Bleak began asking Featherhat general identification questions and explaining Featherhat's rights regarding the interview. During this explanation, Featherhat interrupted Detective Bleak and asked, "Is he alright?" Assuming that Featherhat was referring to Officer Thomas, Detective Bleak informed Featherhat that Thomas would be alright. Detective Bleak then advised Featherhat of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Featherhat waived those rights and proceeded to make incriminating statements. The district court denied Featherhat's motion to suppress his question about Officer Thomas and his post–*Miranda* statements.

¶ 6 Prior to locating Featherhat, officers investigating the incident went to Featherhat's parents' home. Featherhat's father gave the police permission to search a room in which Featherhat had been staying. During the search, the police found various evidentiary items including both loaded and expended shotgun shells. The district court also denied Featherhat's motion to suppress the evidence found during this search.

¶ 7 The State charged Featherhat with aggravated attempted murder and aggravated robbery. The parties stipulated to a competency evaluation for Featherhat, after which the district court found Featherhat competent to stand trial. Featherhat continued to assert diminished capacity and subse-quently changed his plea to not guilty by reason of mental illness. The case proceeded to a jury trial in November 2008, and each side presented expert testimony as to Featherhat's mental capacity and its interplay with Featherhat's alcohol and drug use. The jury convicted Featherhat on both counts, and Featherhat appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 8 Featherhat first argues that various jury instructions at his trial were incomplete or incorrect because the jury should have been instructed that the State bore the burden of disproving Featherhat's mental capacity defense, the instruction on aggravated murder should not have identified Officer Thomas by name, and a special mitigation instruction should have been given. " 'Because jury instructions are statements of law, we review challenges to jury instructions under a correctness standard.' " *State v. Steele*, 2010 UT App 185, ¶ 13, 236 P.3d 161 (quoting *State v. Powell*, 2007 UT 9, ¶ 11, 154 P.3d 788).

■ ¶ 9 Second, Featherhat argues that the district court erred in denying his motion to suppress his pre–*Miranda* question about Officer Thomas, his post–*Miranda* statements, and evidence recovered in the search of his room. In an appeal from the denial of a motion to suppress evidence, "we review the trial court's factual findings for clear error and we review its conclusions of law for correctness." *State v. Tiedemann*, 2007 UT 49, ¶ 11, 162 P.3d 1106.

■ ¶ 10 Third, Featherhat argues that, under his interpretation of Utah's aggravated robbery statute, the evidence does not support his aggravated robbery conviction. " '[T]he evidence and the reasonable inferences which may be drawn therefrom must be viewed in the light most favorable to the jury verdict.' " *State v. Schwenke*, 2009 UT App 345, ¶ 8, 222 P.3d 768 (quoting *State v. Johnson*, 774 P.2d 1141, 1147 (Utah 1989)), *cert. denied*, 230 P.3d 127 (Utah 2010). "A jury conviction is reversed for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have

entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *Id.* (internal quotation marks omitted).

¶ 11 Finally, Featherhat argues that he received ineffective assistance of counsel. To prevail on his ineffective assistance claim, Featherhat "must show that his counsel rendered deficient performance which fell below an objective standard of reasonable professional judgment and that counsel's deficient performance prejudiced him." *State v. Simmons*, 2000 UT App 190, ¶ 4, 5 P.3d 1228 (internal quotation marks omitted).

## ANALYSIS

### I. Jury Instructions

¶ 12 Featherhat raises three arguments relating to the instructions given to the jury at his trial. First, he argues that the jury instruction on his mental illness defense was inadequate in that it failed to instruct the jury that the State had the burden of disproving the defense. Second, he argues that the instruction on the elements of aggravated attempted murder should not have identified the victim, Officer Thomas, by name. Finally, he argues that the district court erred when it declined to give a requested instruction on special mitigation under Utah Code section 76–5–205.5, *see* Utah Code Ann. § 76–5–205.5 (Supp.2010).

■ ¶ 13 Featherhat's first two jury instruction arguments were not preserved for appeal, as Featherhat made no objection to the instructions in the district court. *See generally State v. Rudolph*, 970 P.2d 1221, 1227 (Utah 1998) ("[I]n order to preserve an issue involving a jury instruction, the objecting party must make an objection in the trial court, stating distinctly the matter to which he objects and the ground of his objection." (emphasis omitted) (internal quotation marks omitted)). Featherhat argues that we should nevertheless reach his arguments either under the plain error doctrine or to avoid manifest injustice. *See generally State v. Verde*, 770 P.2d 116, 121–22 (Utah 1989) (discussing plain error and avoidance of manifest injustice as exceptions to the preservation rule).

■ ¶ 14 However, we agree with the State that Featherhat invited the unpreserved jury instruction errors that he now asserts. A defendant may not challenge a jury instruction as plain error or manifest injustice if defense counsel "affirmatively represented to the court that he or she had no objection to the jury instruction." *See State v. Geukgeuzian*, 2004 UT 16, ¶ 9, 86 P.3d 742 (internal quotation marks omitted); *see also State v. Hamilton*, 2003 UT 22, ¶¶ 54–55, 70 P.3d 111 (finding invited error where counsel confirmed on the record that the defense had no objection to the instructions given by the trial court). Here, the district court expressly asked if either party had any objection to a group of jury instructions that included the instructions on Featherhat's mental illness defense and the elements of aggravated attempted murder. Featherhat's counsel replied, "No, Your Honor." Counsel's representation to the district court that he had no objection to these instructions invited any error in the instructions and precludes Featherhat from now challenging the instructions on appeal. *See Hamilton*, 2003 UT 22, ¶¶ 54–55, 70 P.3d 111.

■ ¶ 15 We also agree with the State that Featherhat has demonstrated no error regarding the district court's refusal to give Featherhat's requested jury instruction on special mitigation pursuant to Utah Code section 76–5–205.5. *See generally* Utah Code Ann. § 76–5–205.5. Under section 76–5–205.5(1),

Special mitigation exists when the actor causes the death of another or attempts to cause the death of another:

(a)(i) under circumstances that are not legally justified, but the actor acts under a delusion attributable to a mental illness as defined in Section 76–2–305;

(ii) the nature of the delusion is such that, if the facts existed as the defendant believed them to be in the delusional state, those facts would provide a legal justification for the defendant's conduct; and

(iii) the defendant's actions, in light of the delusion, were reasonable from the objective viewpoint of a reasonable person. . . .

*Id.* § 76–5–205.5(1). Featherhat argued to the district court that he was entitled to an instruction on special mitigation because there was evidence that he suffered from a delusional state when he shot at Officer Thomas. However, the district court ruled that there were not "sufficient facts presented to justify instructing the jury with regard to that issue." On appeal, Featherhat argues simply that "the special mitigation instruction was appropriate to offer in light of the evidence presented by both alienists who found [Featherhat] suffered from delusion among other forms of mental illness."

¶ 16 The Utah Supreme Court has stated, "In enacting section 76–5–205.5, the legislature opted to permit *a narrow class of mentally-ill defendants* to argue for special mitigation in aggravated murder and murder cases." *State v. Drej*, 2010 UT 35, ¶ 21, 233 P.3d 476 (emphasis added). The supreme court's statement reflects the plain language of the statute, which does not purport to apply to every case involving a delusional defendant. Rather, the statute applies to situations where "the nature of the delusion is such that, if the facts existed as the defendant believed them to be in the delusional state, those facts would provide a legal justification for the defendant's conduct." *See* Utah Code Ann. § 76–5–205.5(1)(a)(ii). Featherhat has failed to identify any record evidence suggesting that his shooting of Officer Thomas was motivated by delusional facts or that such delusional facts, if true, would constitute legal justification for Featherhat's actions. Simply claiming to be acting under delusions is insufficient to invoke special mitigation under the statute. Accordingly, we agree with the district court that there is insufficient evidence to support a special mitigation instruction in this case.[2]

¶ 17 We conclude that Featherhat's jury instruction arguments are unpersuasive. Featherhat's counsel informed the district court that he had no objection to the mental illness and aggravated attempted murder instructions, thereby inviting any error in those instructions. As to the special mitigation instruction, we agree with the district court that there was insufficient evidence to support giving such an instruction. Accordingly, we will not disturb Featherhat's convictions on the grounds of error in the jury instructions.

### II. Suppression Issues

¶ 18 Featherhat next argues three issues arising from the district court's denial of his motion to suppress evidence. Specifically, Featherhat argues that the district court should have suppressed his pre-*Miranda* question about whether Officer Thomas would be alright, as well as Featherhat's post-*Miranda* statements and the results of the police search of his room. In denying Featherhat's motion to suppress, the district court ruled that Featherhat's pre-*Miranda* question was spontaneous and voluntary, his post-*Miranda* statements followed a knowing and voluntary waiver of *Miranda* rights, and the search of his room was conducted pursuant to the valid consent of his father.

¶ 19 On appeal, Featherhat's briefing of the issue concerning his pre-*Miranda* question is extremely cursory. In his summary of argument, he asserts that Detective Bleak "staged the interrogation to come off friendly and trusting and then used that relationship of trust to manipulate [Featherhat]," and that "the ploy did not support the pre-*Miranda* admission." The body of Featherhat's argument, however, focuses almost exclusively on his arguments regarding his post-*Miranda* admissions and the search of his room. Featherhat's argument on appeal does not address the district court's finding that Detective Bleak's questions and statements prior to Featherhat's pre-*Miranda* question were not "–'reasonably likely

---

**2.** We also note the State's argument that special mitigation under section 76–5–205.5 was unavailable to Featherhat because he was voluntarily intoxicated at the time of the shooting and his intoxication caused or contributed to his mental illness. *See* Utah Code Ann. § 76–5–205.5(2) (Supp.2010) (disallowing special mitigation based on mental illness when a defendant's vol-

untary intoxication "caused, triggered, or substantially contributed to the mental illness"). However, because we affirm the district court based on the insufficiency of the evidence to support a special mitigation instruction, we need not address the State's voluntary intoxication argument.

to elicit an incriminating response,'–" *State v. Kooyman,* 2005 UT App 222, ¶ 36, 112 P.3d 1252 (quoting *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)), or the district court's finding that Featherhat's question was spontaneous and voluntary. These findings render Featherhat's question admissible for *Miranda* purposes, yet Featherhat fails to challenge the findings on appeal. When an appellant does not address the grounds upon which the district court denies a motion to suppress, we will not disturb the district court's ruling. *See State v. Hurt,* 2010 UT App 33, ¶ 16, 227 P.3d 271 (declining to disturb lower court ruling when appellate briefing failed to address the grounds for the decision below); *see also Allen v. Friel,* 2008 UT 56, ¶ 7, 194 P.3d 903.

¶ 20 Featherhat's next argument concerns the admissibility of statements that he made after receiving the *Miranda* warnings and waiving the rights enumerated therein. Featherhat argues that the waiver of his *Miranda* rights was not knowing and intelligent in light of what he characterizes as Detective Bleak's pretextual gestures of caring and concern, such as providing Featherhat with a blanket and hot chocolate to warm him after he spent the night out in the elements. Featherhat also argues that Detective Bleak impermissibly enticed him to confess by using "the pretext of honesty and favorable treatment if he cooperated."

■■■■■ ¶ 21 We agree with the State that Featherhat failed to preserve any argument that Detective Bleak's kindness prior to the interview rendered his *Miranda* waiver ineffective. "[I]n order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *State v. Maese,* 2010 UT App 106, ¶ 13, 236 P.3d 155 (alteration in original) (internal quotation marks omitted), *cert. denied,* 247 P.3d 774 (Utah 2011). Here, Featherhat's motion below focused on whether he waived his *Miranda* rights at all, not on whether any waiver that did occur was obtained through any inappropriate kindness or consideration on the part of Detective Bleak. Accordingly, Featherhat has failed to preserve his argu-

ment regarding Detective Bleak's actions prior to the interrogation for appeal, and we do not address it.

■■■■■ ¶ 22 Featherhat did argue to the district court that his questions to Detective Bleak during the interview, and Bleak's "elusive" answers, demonstrated that Featherhat's *Miranda* waiver was not valid. Responding to this argument, the district court observed that there was some tension between Featherhat's asserted understanding that anything he said during the interview could be used against him in court and his mid-interview query to Detective Bleak as to whether answering a particular question would help him in court. However, we agree with the district court's conclusion that, under the totality of the circumstances, Featherhat's *Miranda* waiver was knowing and voluntary.

¶ 23 During the interview, Featherhat asked Detective Bleak, "Will this help me in court [or] will it help you guys?" Detective Bleak responded, in part,

> Dude, I'll be honest with you. Honesty goes a long way for everyone involved. I'll tell you that straight up. Honesty goes a long way—with the prosecutor, with the judge—nobody wants to go into court and listen to some b.s., dude, ah, ah, and that's the truth. Honesty goes a long way-with me, with—with the judge, with the prosecutor.

The district court found that Detective Bleak's response had the effect of reminding Featherhat that his statements would be shared with the judge and the prosecutor. However, the district court also voiced some discomfort with Detective Bleak's emphasis on the benefits of honesty:

> The Court acknowledges that it is troubled by the way this reminder was given, couched as it was in terms of the benefits of being honest. Had Detective Bleak simply given straightforward answers to [Featherhat's] questions, it would certainly have made it easier for the Court to find that [Featherhat's] waiver was knowing and intelligent. Nevertheless, even assuming that Detective Bleak's responses to [Featherhat's] questions obscured more

than they illuminated, the Court is still persuaded, based on the remaining circumstances here, that [Featherhat's] waiver was knowing and intelligent.

(Citations omitted.)

¶ 24 We share the district court's concern that, in some circumstances, an interviewer's emphasis on the benefits of honesty and cooperation could muddy a defendant's understanding that his statements could be used against him. *See, e.g., Hart v. Attorney Gen.*, 323 F.3d 884, 894–95 (11th Cir.2003) ("The phrase 'honesty will not hurt you' is simply not compatible with the phrase 'anything you say can be used against you in court.' "). However, we also agree with the district court's assessment of the totality of the circumstances surrounding Featherhat's waiver of his *Miranda* rights as supporting a knowing and voluntary waiver.

¶ 25 Here, the district court identified those circumstances as including Featherhat's assertion that he understood his rights; Detective Bleak's reminders, however oblique, that Featherhat's statements would be shared with the judge and prosecutor; Featherhat's silence in response to certain questions, indicating an awareness that he need not speak and that doing so might not be in his best interest; and Featherhat's lack of surprise when informed at the end of the interview that he would be arrested and his statements given to the prosecutor. We agree with the district court that these circumstances support a finding that Featherhat knowingly and intelligently waived his *Miranda* rights, and we reject Featherhat's argument on appeal that Detective Bleak's appeals to honesty and cooperation rendered his waiver invalid.

¶ 26 Finally, Featherhat argues that the district court erred in concluding that the police search of Featherhat's room was conducted pursuant to the consent of his father. Featherhat's primary complaint on appeal appears to be that the district court believed the testimony of the police over that of Featherhat's parents.[3] However, consent is a factual issue. *See State v. Hansen*, 2002 UT 125, ¶ 48, 63 P.3d 650. "Since a district court is in a unique position to assess the credibility of witnesses and weigh the evidence, the court of appeals may not substitute its judgment as to a factual question unless the district court's finding is clearly erroneous." *Id.* (citation omitted). Here, the district court's suppression order acknowledged the factual disputes on the consent issue and stated that the court had "carefully considered the competing testimony, and ... resolved this dispute in favor of the State." Featherhat's argument on appeal exposes no clear error in the district court's factual finding on consent, and we will not disturb that finding.

¶ 27 We also agree with the State that Featherhat has failed to identify any evidence seized in the search that was actually admitted at trial. Thus, the admissibility question is moot because Featherhat has failed to demonstrate that any error could have affected the outcome of his trial. *See generally State v. Genovesi*, 909 P.2d 916, 922–24 (Utah Ct.App.1995) (discussing the harmless error doctrine as it applies to the suppression of evidence).

### III. Sufficiency of the Evidence

¶ 28 Featherhat next argues that the State presented insufficient evidence to convict him of the crime of aggravated robbery and that the district court committed plain error when it submitted that count to the jury. A person commits the crime of robbery when he "unlawfully and intentionally takes or attempts to take personal property in the possession of another from his person, or immediate presence, against his will, by means of force or fear, and with a purpose or intent to deprive the person permanently or temporarily of the personal property." Utah Code Ann. § 76–6–301(1)(a) (2008). Robbery constitutes aggravated robbery "if in the course of committing robbery, [a person]: (a)

---

**3.** To the extent that Featherhat attempts to raise the issue of his father's actual or apparent authority to consent to the search, the district court expressly noted in its suppression order that Featherhat did not raise that issue in his motion to suppress. Accordingly, the issue is not preserved for appeal. *See State v. Maese*, 2010 UT App 106, ¶ 13, 236 P.3d 155, *cert. denied*, 247 P.3d 774 (Utah 2011).

uses or threatens to use a dangerous weapon . . .; (b) causes serious bodily injury upon another; or (c) takes or attempts to take an operable motor vehicle." *Id.* § 76–6–302(1).

¶ 29 Featherhat concedes that, looking at the incident as a whole, "the evidence supports each and every alternative for aggravation, including the taking of an operable motor vehicle." However, Featherhat argues that he used his shotgun only against Officer Thomas and not in the subsequent taking of Hinojosa's vehicle. Featherhat also argues that the only robbery that occurred was his taking of the vehicle, which cannot serve to establish both a robbery and the aggravation of that robbery.

¶ 30 We reject Featherhat's arguments and determine that there was sufficient evidence to convict Featherhat of aggravated robbery, both because he used a dangerous weapon while taking Hinojosa's vehicle and because he took an operable motor vehicle. Tallman testified that she heard gunshots and that Featherhat ran toward her with the shotgun and demanded that she drive him from the scene. Instead, she ran, and Featherhat took Hinojosa's vehicle himself. Tallman also testified that she was scared because of the events and because Featherhat had a gun. This testimony alone is sufficient to support a jury conclusion that Featherhat used or threatened to use a dangerous weapon while taking Hinojosa's vehicle. *See In re R.G.B.*, 597 P.2d 1333, 1335 (Utah 1979) (stating with regard to aggravated robbery that "it is not necessary that the State prove that the robber actually pointed a gun at the victim. . . . If merely exhibiting the gun creates fear in the victim, it constitutes 'use of a firearm' for that purpose").

¶ 31 Featherhat also argues that the taking of a motor vehicle cannot constitute both an underlying robbery and the aggravation of that robbery. However, this court has previously rejected that argument. In *State v. Irvin*, 2007 UT App 319, 169 P.3d 798, we observed that the purpose of the aggravating factor pertaining to motor vehicles is "to proscribe the act of carjacking." *See id.* ¶ 20 n. 4. Thus, an aggravated robbery is committed by the single act of " 'forcible theft of a vehicle from a motorist,' " *id.*

(emphasis omitted) (quoting Black's Law Dictionary 205 (7th ed. 1999)), regardless of whether any other property is taken.

¶ 32 The evidence here is sufficient to establish that Featherhat committed aggravated robbery, both because Featherhat used a dangerous weapon during a robbery and because the property taken was an operable motor vehicle. A conviction based on either theory would be sufficiently supported by the evidence. Accordingly, the district court committed no error, plain or otherwise, in submitting the aggravated robbery count to the jury.

### IV. Effectiveness of Counsel

¶ 33 Finally, Featherhat argues that he received ineffective assistance of counsel at trial because "counsel should have scrutinized the proposed jury instructions more closely," "more evidence could have been developed from the testimony of the doctors regarding [Featherhat's] delusional state," and counsel failed to move for a directed verdict on the aggravated robbery count. We reject each of these arguments.

¶ 34 In order to demonstrate ineffective assistance of counsel, Featherhat must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), by proving (1) that counsel rendered deficient performance which fell below an objective standard of reasonable professional judgment and (2) that counsel's deficient performance prejudiced Featherhat. *See id.* at 687–92, 104 S.Ct. 2052. To demonstrate deficient performance, a defendant "must identify specific acts or omissions demonstrating that counsel's representation failed to meet an objective standard of reasonableness." *See State v. Montoya*, 2004 UT 5, ¶ 24, 84 P.3d 1183 (internal quotation marks omitted). To demonstrate prejudice, it must be shown that "but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *See State v. Lee*, 2006 UT 5, ¶ 37, 128 P.3d 1179 (internal quotation marks omitted). "Neither speculative claims nor counsel's failure to make futile objections establishes inef-

fective assistance of counsel." *State v. Chacon,* 962 P.2d 48, 51 (Utah 1998).

 ¶ 35 Here, Featherhat's bare assertions that counsel should have done something more regarding the proposed jury instructions and the doctors' testimony represent speculation as to both prongs of the *Strickland* test.[4] Featherhat does not identify what further actions he believes counsel should have taken as to these issues, leaving this court to speculate as to the "specific acts or omissions" that might have rendered counsel's assistance ineffective. *See Montoya,* 2004 UT 5, ¶ 24, 84 P.3d 1183. Similarly, in the absence of any argument as to what counsel was supposed to have done to further explore these issues, we have no way of evaluating the likelihood of a different result. For these reasons, Featherhat's arguments regarding the jury instructions and the doctors' testimony constitute an "invitation to speculate," and we decline to address those arguments. *See State v. Arguelles,* 921 P.2d 439, 441 (Utah 1996).

 ¶ 36 As to counsel's failure to request a directed verdict on the aggravated robbery count, we have rejected Featherhat's argument that the evidence was insufficient to support that count. "In criminal cases, our review of a district court's ruling on a motion for a directed verdict and of the sufficiency of the evidence to support a jury verdict involves basically the same analysis." *State v. Patrick,* 2009 UT App 226, ¶ 10, 217 P.3d 1150 (internal quotation marks omitted). "As to both issues, we review the evidence and all inferences that may reasonably be drawn from it to ensure that there was some basis upon which a reasonable jury could reach a verdict of guilt beyond a reasonable doubt." *Id.* Because there was sufficient evidence to support a guilty verdict against Featherhat on the aggravated robbery charge, a motion for a directed verdict on that count would have been properly denied. Counsel's failure to make such a futile motion cannot establish ineffective assistance of

counsel. *See generally Chacon,* 962 P.2d at 51.

## CONCLUSION

¶ 37 We conclude that Featherhat's asserted errors regarding the jury instructions either lack merit or constitute, at most, invited error; that the district court properly denied Featherhat's motion to suppress evidence; that the evidence was sufficient to support Featherhat's aggravated robbery conviction; and that Featherhat has not demonstrated that he received ineffective assistance of counsel at trial. Accordingly, we affirm Featherhat's convictions.

¶ 38 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge and MICHELE M. CHRISTIANSEN, Judge.

---

4. To the extent that Featherhat's brief could be read as incorporating his jury instruction arguments into his ineffective assistance of counsel claim, the brief contains no argument that counsel's invitation of any error in the instructions was itself ineffective assistance.