IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20090107-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (September 20, 2012) |
| Marc Clifton Bryant, | ) | |
| | ) | 2012 UT App 264 |
| Defendant and Appellant. | ) | |

-----

Fifth District, St. George Department, 041500625
The Honorable James L. Shumate

Attorneys:     Kenneth L. Combs, St. George, for Appellant
               Mark L. Shurtleff and Ryan D. Tenney, Salt Lake City, for Appellee

-----

Before Judges Davis, Thorne, and Christiansen.

THORNE, Judge:

¶1     Marc Clifton Bryant appeals from his convictions of multiple crimes, including aggravated kidnapping and rape, resulting from his sexual and physical abuse of a fifteen-year-old girl, B.S. We partially vacate the district court's sentencing order and remand for further sentencing proceedings, but we otherwise affirm Bryant's convictions and sentence.

BACKGROUND

¶2     Bryant first met B.S., the daughter of one of his friends, when B.S. was eleven years old and Bryant was thirty-nine. In July 2003, when she was fifteen, B.S. stayed at

Bryant's home for two weeks to babysit his younger children while he was at work. On the morning of the day that B.S. was to return home, Bryant asked her if she would have sex with him. B.S. did not want to have sex with Bryant, but she allowed him to have intercourse with her anyway. Shortly thereafter, Bryant suggested to B.S.'s mother (Mother) that the two families should move in together to share expenses. Mother agreed, and she, Bryant, and their children all moved into a home in St. George.

¶3     Mother worked evenings, leaving Bryant home alone with the children during much of that time. Bryant and B.S. would sometimes use alcohol and methamphetamine together. Mother suspected that some sort of illicit relationship was developing between Bryant and B.S., but both of them denied this when Mother inquired. Shortly before Christmas 2003, Bryant again asked B.S. to have sex with him, and she did so.

¶4     In late March or early April 2004, Bryant got angry with B.S. when she told him that she needed to go to school early to work on a science project. Bryant did not believe her and accused her of wanting to go to school early to "flirt with boys." During the next week, Bryant remained angry with B.S., verbally abused her, and accused her of lying to him. About a week after the science project dispute, Bryant confronted B.S. about her alleged lying. When she said she did not want to talk about it, Bryant attacked her and proceeded to abuse and torture her for the rest of the night. This included Bryant shackling B.S. and handcuffing her to her bed, burning her face and arm with a heated screwdriver, holding her head underwater in the bathtub, and choking her. When Bryant realized that Mother would soon return home from work, Bryant placed the bound B.S. into his van and drove her to a remote area, where he continued to burn, punch, and choke her.

¶5     At some point, Bryant left the van to smoke, and when he returned he asked a bloodied B.S. what had happened to her. She answered, "You did this to me." Bryant said he was sorry and attempted to clean up the blood with napkins. He then took her home, where he had sex with her again. Early the next morning, Bryant woke Mother and showed her B.S.'s injuries. B.S. did not want to contact police, and Mother later claimed that she was afraid to do so. It was not until May 2004, approximately two months after the attack, that Mother and B.S. moved out of the home and reported Bryant's attack on B.S. to the police.

¶6     Bryant was initially charged with one count of aggravated kidnapping, one count of child abuse, and one count of issuing a terroristic threat. After the sexual activity between B.S. and Bryant came to light, Bryant was additionally charged with three

counts of rape, one count of witness tampering, and one count of criminal solicitation. Bryant was tried in absentia before a jury and convicted in April 2008.[1]

¶7 The State and the defense team both spent a great amount of effort to have Bryant's son, DJ, testify at trial. Nevertheless, DJ did not appear at trial. The district court concluded that the parties and court had done everything possible to procure DJ's attendance but that he was unavailable. The district court accordingly granted the State's request to use DJ's preliminary hearing testimony and allowed the State to play the video of that testimony for the jury. Other trial witnesses included B.S. and Mother. The jury found Bryant guilty of aggravated kidnapping, child abuse, three counts of rape, witness tampering, criminal solicitation, and issuing a terroristic threat.

¶8 Bryant was present for his sentencing, during which the district court commented that in thirty-four years and thousands of criminal cases, it had "seen very few instances of such horrific conduct." Because the jury found that Bryant had inflicted serious bodily injury upon B.S. during the attack, the district court sentenced Bryant to life in prison without parole for the aggravated kidnapping count. *See* Utah Code Ann. § 76-5-302(3)(b) (Supp. 2007) (authorizing life without parole as a sentence for aggravated kidnapping if "the trier of fact finds that during the . . . kidnapping the defendant caused serious bodily injury to another"). The district court then concluded that, because it had relied on B.S.'s injuries as the basis of its aggravated kidnapping sentence, Bryant's child abuse conviction necessarily merged into the kidnapping conviction to avoid a double punishment for injuring B.S. Accordingly, the district court imposed "no sentence" for the child abuse conviction. The district court sentenced Bryant to consecutive prison sentences on each of his other convictions. Bryant appeals.

ISSUES AND STANDARDS OF REVIEW

¶9 Bryant first argues that his sentence of life without parole for aggravated kidnapping is excessive, particularly when viewed in light of his other consecutive sentences. "The [district] court has substantial discretion in conducting sentencing hearings and imposing a sentence, and we will in general overturn the [district] court's

---

1. The reasons for Bryant's trial in absentia are unclear. However, Bryant raises no argument that the district court committed any error by conducting the trial in his absence.

sentencing decisions only if we find an abuse of discretion." *State v. Patience*, 944 P.2d 381, 389 (Utah Ct. App. 1997) (citations omitted). However, a sentence that "is beyond the authorized statutory range" constitutes an illegal sentence that may be corrected at any time. *See State v. Thorkelson*, 2004 UT App 9, ¶ 15, 84 P.3d 854.

¶10    Second, Bryant argues that his counsel was ineffective for failing to investigate the possibility that Bryant was mentally ill. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law, which we review for correctness." *State v. Fowers*, 2011 UT App 383, ¶ 15, 265 P.3d 832 (internal quotation marks omitted).

¶11    Third, Bryant claims that he was subjected to double jeopardy when he was convicted of both aggravated kidnapping and child abuse. "A claimed violation of double jeopardy protections is 'a question of law that we review for correctness.'" *State v. Escamilla-Hernandez*, 2008 UT App 419, ¶ 7, 198 P.3d 997 (quoting *State v. Kell*, 2002 UT 106, ¶ 61, 61 P.3d 1019).

¶12    Fourth, Bryant argues that DJ was inappropriately deemed to be unavailable for the purpose of presenting his preliminary hearing testimony to the jury at trial. We review a district court's determination that a witness is unavailable for abuse of discretion. *See State v. Carter*, 888 P.2d 629, 646 (Utah 1995).

¶13    Finally, Bryant challenges the district court's decision not to provide a lesser offense jury instruction on the rape charges. Bryant also maintains that the district court incorrectly instructed the jury on the question of whether he was in a position of special trust with respect to B.S., and specifically, whether he was an "adult co-habitant" of Mother. "Claims of erroneous jury instructions present questions of law that we review for correctness." *State v. Jeffs*, 2010 UT 49, ¶ 16, 243 P.3d 1250. "We therefore review the instructions given to the jury without deference to the [district] court." *Id.*

ANALYSIS

I. Life Without Parole for Aggravated Kidnapping

¶14    Bryant first argues that his sentence of life without parole for aggravated kidnapping is excessive. Notwithstanding the district court's comments about the severity of his conduct, Bryant argues that the State failed to prove that he had inflicted

serious bodily injury on B.S. and that life without parole in conjunction with his other consecutive sentences constitutes cruel and unusual punishment. We need not address Bryant's arguments, however, as we agree with the State that life without parole was not a permissible sentencing option for the aggravated kidnapping that Bryant committed in 2004.

¶15 At the time Bryant committed his crimes, life without parole was not a sentencing option for the crime of aggravated kidnapping. Rather, that crime was punishable only "by imprisonment for an indeterminate term of not less than 6, 10, or 15 years and which may be for life." Utah Code Ann. § 76-5-302(3) (2003). It was not until 2007 that Utah Code section 76-5-302 was amended to provide for a sentence of life without parole "if the trier of fact finds that during the course of the commission of the aggravated kidnapping the defendant caused serious bodily injury to another." *See id.* § 76-5-302(3)(b) & amend. notes (2008). The State concedes that the district court erred when it sentenced Bryant under the 2007 version of the statute rather than the 2003 version.

¶16 The State's concession is well taken. Despite Bryant's crimes having been committed in 2004, the district court applied the 2007 version of the statute to sentence him to life without parole for aggravated kidnapping causing serious bodily injury. So applied, the 2007 amendment constituted an impermissible ex post facto application of law in regard to Bryant. *See generally Monson v. Carver*, 928 P.2d 1017, 1026 (Utah 1996) ("An ex post facto law is one . . . which makes more burdensome the punishment for a crime, after its commission . . . ." (internal quotation marks omitted)); *see also State v. Clark*, 2011 UT 23, ¶ 11 & n.5, 251 P.3d 829 (discussing ex post facto laws and Utah's statutory bar against retroactive application of amendments). Bryant should properly have been sentenced under the 2004 version of Utah Code section 76-5-302, and because his aggravated kidnapping sentence exceeded the statutory range permitted in 2004, the sentence of life without parole constitutes an illegal sentence that must be vacated. *See generally State v. Thorkelson*, 2004 UT App 9, ¶ 15, 84 P.3d 854 ("A 'patently' or 'manifestly' illegal sentence generally occurs in one of two situations: (1) where the sentencing court has no jurisdiction, or (2) where the sentence is beyond the authorized statutory range.").

¶17 The district court's misapplication of the 2007 aggravated kidnapping statute also resulted in its ruling that Bryant's child abuse conviction merged into his kidnapping offense. Despite not bringing a cross-appeal, the State asks us to reverse the district court's merger ruling and reinstate Bryant's child abuse conviction in light of the reversal of his aggravated kidnapping sentence. Bryant opposes the reinstatement

of his child abuse conviction, arguing that the State did not cross-appeal the issue and that an increased sentence on that conviction after appeal would violate his double jeopardy rights. We are not persuaded by Bryant's arguments and reverse the district court's merger ruling.

¶18    Despite the State's failure to cross-appeal, our acceptance of the State's concession "logically require[s] that the lower court's decision be modified" by reinstating Bryant's child abuse conviction. *See State v. South*, 924 P.2d 354, 356 n.4 (Utah 1996) (noting an exception to the requirement of a cross-appeal "when, although an appellee does not request a change in the lower court's decision, the appellee's argument would nevertheless logically require that the lower court's decision be modified"). The only reason that the district court merged Bryant's aggravated kidnapping and child abuse convictions was out of a concern that Bryant not be punished twice for the same act of serious bodily injury. The 2004 aggravated kidnapping statute contains no enhancement for serious bodily injury, allowing only for "an indeterminate term of not less than 6, 10, or 15 years and which may be for life," regardless of any injury caused by the defendant during the crime. *See* Utah Code Ann. § 76-5-302(3) (2003). The district court's merger ruling resulted from its erroneous application of the 2007 aggravated kidnapping statute, which increased Bryant's sentence to life without parole based on the serious physical injury to B.S, which was also an element in Bryant's child abuse conviction. Thus, our determination that the 2004 statute governs Bryant's aggravated kidnapping sentence necessarily suggests revisitation of the district court's merger ruling despite the State's failure to cross-appeal.

¶19    Bryant also fails to establish that reinstatement of his child abuse conviction will expose him to double jeopardy. Bryant argues that any sentence imposed on the child abuse conviction will necessarily violate the prohibition on increased sentences after appeal. *See generally* Utah Code Ann. § 76-3-405(1) (2008). However, the district court never imposed a sentence on Bryant's child abuse conviction because of its merger ruling. Thus, there is no sentence to increase on remand. In any event, the merger was the result of legal error by the district court and there is no double jeopardy violation created when we correct that error and reinstate the jury's verdict. *See generally United States v. Wilson*, 420 U.S. 332, 344–45 (1975) ("[Where] reversal on appeal would merely reinstate the jury's verdict, review of such an order does not offend the policy against multiple prosecution[s]."); *State v. Harrison*, 2011 UT 74, ¶ 16, 269 P.3d 133 ("If a defendant benefits from an error of law at trial that can be 'corrected without subjecting him to a second trial before a second trier of fact,' that error can be corrected without implicating double jeopardy." (quoting *Wilson*, 420 U.S. at 345)).

¶20 Because we determine that life without parole was not an available sentencing option for an aggravated kidnapping committed in 2004, we vacate Bryant's sentence of life without parole on the aggravated kidnapping offense. We also reverse the district court's determination that Bryant's child abuse conviction merged into his aggravated kidnapping conviction.[2] These actions require that Bryant be resentenced on his aggravated kidnapping conviction and given an initial sentence on the child abuse conviction. Therefore, we remand this matter to the district court for further sentencing proceedings on these two convictions under the applicable statutes in effect in 2004.

## II. Ineffective Assistance of Counsel

¶21 Bryant next argues that his trial counsel provided ineffective assistance when he failed to investigate Bryant's potential mental illness as a defense or a mitigating factor at sentencing. To demonstrate ineffective assistance of counsel, "a defendant must show (1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *Wickham v. Galetka*, 2002 UT 72, ¶ 19, 61 P.3d 978 (internal quotation marks omitted); *see also Strickland v. Washington*, 466 U.S. 668, 686–87 (1984).

¶22 "The proper measure for determining whether an attorney's representation was deficient is 'simply reasonableness under prevailing professional norms.'" *Taylor v. State*, 2012 UT 5, ¶ 54, 270 P.3d 471 (quoting *Strickland*, 466 U.S. at 688). "There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (internal quotation marks omitted). "'To show prejudice in the ineffective assistance of counsel context, the defendant bears the burden of proving that counsel's errors actually had an adverse effect on the defense and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.'" *State v. Fowers*, 2011 UT App 383, ¶ 21, 265 P.3d 832 (quoting *State v. Munguia*, 2011 UT 5, ¶ 30, 253 P.3d 1082). It is not necessary for a reviewing court to address both prongs of the ineffective assistance test "if [a defendant] makes an

---

2. Other than determining that it is not supported under the applicable 2004 statutes, we express no opinion on the correctness of the district court's merger ruling. That is, we do not address the question of whether or when, under the 2007 statutes, a child abuse conviction merges into a conviction for aggravated kidnapping causing serious bodily injury.

insufficient showing on one." *State v. Millard*, 2010 UT App 355, ¶ 15, 246 P.3d 151 (internal quotation marks omitted); *see also State v. Bair*, 2012 UT App 106, ¶ 49, 275 P.3d 1050 ("[B]ecause both deficiency and prejudice must be shown, a reviewing court can dispose of an ineffectiveness claim on either ground." (internal quotation marks omitted)).

¶23   Here, we determine that Bryant has failed to establish prejudice arising from trial counsel's alleged failings.[3]  To prevail on his ineffective assistance claim, Bryant must show prejudice as "a demonstrable reality and not a speculative matter." *See State v. Chacon*, 962 P.2d 48, 50 (Utah 1998) (internal quotation marks omitted).  There can be no prejudice from counsel's failure to investigate Bryant's mental health unless Bryant can show that he did indeed have some mental condition that would have been relevant to his guilt or sentencing.  *Cf. State v. Bradley*, 2002 UT App 348, ¶ 65, 57 P.3d 1139 (rejecting a failure to investigate claim for lack of demonstrated prejudice where the defendant "[did] not offer any evidence about who these potential witnesses are or what their testimony would entail").  However, Bryant has failed to identify any evidence of the mental condition that counsel allegedly failed to discover.  Instead, Bryant argues on appeal that a handful of statements elicited from B.S. at trial suggest that he was mentally ill when he committed his crimes.[4]

¶24   If there is actual evidence of Bryant suffering from mental illness, the appropriate method of placing such evidence before this court at this point would be via a rule 23B remand for an evidentiary hearing.  *See generally* Utah R. App. P. 23B(a) ("A party to an

---

3. Our disposition of Bryant's ineffective assistance claim on the prejudice prong is not intended to suggest that Bryant's counsel's performance fell below reasonable professional standards.  *Cf. Archuleta v. Galetka*, 2011 UT 73, ¶ 131, 267 P.3d 232 ("'[C]ounsel is not ineffective if he or she has no reason to think that a mental examination would be useful.'" (alteration in original) (quoting *Riley v. Taylor*, 277 F.3d 261, 306 (3d Cir. 2001))).

4. These statements, as paraphrased by Bryant on appeal, include B.S.'s testimony that Bryant's demeanor "changed completely" after he left her alone in his van after kidnapping and abusing her; that when he returned fifteen to twenty minutes later, he asked her what had happened to her; and that she "realized he had not been in his right mind."  B.S.'s actual testimony was that when Bryant asked her what had happened to her, she "thought maybe he wasn't in his right state of mind."  B.S. also responded affirmatively when asked, "So at that point, had [Bryant's] demeanor changed?"

appeal in a criminal case may move the court to remand the case to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel."). However, Bryant has not requested a rule 23B remand on this issue.[5] Further, "[t]he purpose of Rule 23B is for appellate counsel to put on evidence he or she now has, not to amass evidence that might help prove an ineffectiveness of counsel claim." *State v. Johnston*, 2000 UT App 290, ¶ 7, 13 P.3d 175 (per curiam); *see also* Utah R. App. P. 23B(a) ("The motion shall be available only upon a nonspeculative allegation of facts . . . ."). A remand under these circumstances, where Bryant has not identified what evidence of mental illness he would be able to establish below, would amount to an improper "fishing expedition." *See State v. Garrett*, 849 P.2d 578, 581 (Utah Ct. App. 1993).

¶25 Bryant has not identified any record evidence indicating that he suffers from mental illness in some relevant way that his trial counsel failed to discover. Further, Bryant has neither requested a rule 23B remand nor identified specific facts pertaining to his alleged mental illness to warrant such a remand. Under these circumstances, Bryant's claim that effective counsel could have used mental illness as a defense or a mitigating factor at sentencing is pure speculation that will not support a claim of ineffective assistance of counsel. *See generally Chacon*, 962 P.2d at 50. Accordingly, we reject Bryant's ineffective assistance of counsel argument.

### III. Double Jeopardy

¶26 Next, Bryant argues that his double jeopardy rights were violated when he was convicted of both aggravated kidnapping and child abuse. *See generally State v. Harris*, 2004 UT 103, ¶ 24, 104 P.3d 1250 (stating that the Utah and federal double jeopardy clauses "protect[] a defendant from (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense" (internal quotation marks omitted)). In particular, Bryant argues that he was punished twice for the same act of serious bodily injury

---

5. Bryant does request a rule 23B remand in his reply brief for purposes of exploring several other allegations of ineffective assistance of counsel, allegations that he raises for the first time in his reply brief. However, we will not address arguments raised for the first time in an appellant's reply brief. *See State v. Weaver*, 2005 UT 49, ¶ 19, 122 P.3d 566 (stating that matters raised for the first time in a reply brief will not be considered); *see also* Utah R. App. P. 24(c) ("Reply briefs shall be limited to answering any new matter set forth in the opposing brief.").

because that injury served to both establish his child abuse offense and enhance his sentence for aggravated kidnapping to life without parole. Bryant argues that this constitutes a double jeopardy violation that "prejudiced [him] because it caused the jury's verdict to be undermined since they were given the ability to convict him on . . . multiple charges instead of a single charge for the same incident and elements."

¶27    To a large extent, Bryant's double jeopardy argument is resolved by our disposition of his aggravated kidnapping sentence. *See supra* ¶¶ 14–20. As we have previously stated, Bryant should have been sentenced under the version of Utah Code section 76-5-302 in effect in 2004, which did not include a sentencing enhancement for the infliction of serious bodily injury during a kidnapping. *See generally* Utah Code Ann. § 76-5-302 (2003). Accordingly, our decision today vacates Bryant's aggravated kidnapping sentence, reverses the district court's merger of his child abuse and aggravated kidnapping convictions, and remands this matter for resentencing on both of those counts. This disposition obviates any potential double jeopardy problem arising from the district court's erroneous enhancement of Bryant's aggravated kidnapping sentence because the 2003 aggravated kidnapping statute under which Bryant will be resentenced does not contain a serious bodily injury element.

¶28    Bryant also argues that the jury's verdict was undermined because the jury was not instructed that it could not convict Bryant of both child abuse and enhanced aggravated kidnapping based on the same act of infliction of serious bodily injury. To the extent Bryant is correct that double jeopardy considerations would preclude such a result, *see supra* ¶ 20 note 2, the jury in this case was not asked to decide whether Bryant's act of aggravated kidnapping resulted in serious bodily injury. Rather, the jury was correctly instructed on the elements of child abuse, which included an element of "serious physical injury," and aggravated kidnapping, which contained no physical injury element. *See generally* Utah Code Ann. § 76-5-109 (2003) (child abuse); *id.* § 76-5-302 (aggravated kidnapping). The 2007 version of Utah Code section 76-5-302, which provided for an enhanced sentence for aggravated kidnappings resulting in serious bodily injury, was raised for the first time at Bryant's sentencing hearing. This occurred long after Bryant's convictions by the jury, and therefore it does not affect our confidence in the jury's verdict.

IV. Witness Unavailability

¶29    Bryant next argues that the district court abused its discretion in determining that his son DJ was unavailable to testify at trial and allowing DJ's preliminary hearing testimony to be played for the jury. On appeal, Bryant's characterization of the entire

circumstances surrounding the district court's unavailability decision is, "The prosecution subpoenaed [DJ] to testify at the jury trial, but he failed to appear." Bryant argues that DJ's simple failure to comply with the State's subpoena does not establish that it was "practically impossible to produce the witness in court." *See State v. Menzies*, 889 P.2d 393, 402 (Utah 1994) (internal quotation marks omitted).

¶30 Bryant's appellate brief substantially misrepresents the totality of the circumstances presented below and fails to address the actual grounds for the district court's ruling. The State did subpoena DJ and personally served him after locating him in Arizona. DJ, who was apparently known for his drug lifestyle and transience, refused to give the process server a phone number or address where he could be located. But Bryant's defense team also wanted DJ to testify and made its own efforts to secure DJ's attendance at trial. The defense was in contact with DJ in the weeks before trial and sent its investigator to pick him up on the first morning of trial. The investigator was unable to locate DJ, and the district court issued an arrest warrant for DJ at the defense's request. Later that day, Bryant's investigator spoke with DJ by phone, and DJ informed the investigator that he feared arrest on the warrant if he went to court. The district court then telephoned DJ on the record and assured him that he would not be arrested if he came to court and testified. DJ agreed to come to court, and the investigator immediately went to get him, but when the investigator arrived at the arranged meeting place, DJ was not there. The investigator spent thirty minutes at the meeting place calling DJ's name and trying to locate him, but DJ could not be found. At this point, the district court made its unavailability determination, stating, "We did everything we could to encourage [DJ]" to appear.

¶31 Clearly, there was much more to the district court's unavailability determination than DJ's simple failure to comply with the State's subpoena. The extensive efforts made by the State, the defense team, and the district court all support the district court's unavailability determination. By failing to acknowledge and account for the defense team's own role in attempting to secure DJ's attendance, as well as the arrest warrant and the district court's phone conversation with DJ, Bryant has failed to address the grounds upon which the district court actually made its unavailability determination. Accordingly, we will not disturb the district court's ruling. *Cf. State v. Featherhat*, 2011 UT App 154, ¶ 19, 257 P.3d 445 ("When an appellant does not address the grounds

upon which the district court denies a motion to suppress, we will not disturb the district court's ruling.").[6]

## V. Jury Instructions

¶32 Finally, Bryant argues that the jury was not properly instructed on the rape charges against him. Specifically, Bryant argues that he was entitled to a lesser included offense instruction on two of the three rape charges against him, as well as to an instruction defining "adult cohabitant of a parent" as that term is used in the definition of a "position of special trust," *see* Utah Code Ann. § 76-5-404.1(h) (2003) ("'[P]osition of special trust' means that position occupied by a person in a position of authority, who, by reason of that position is able to exercise undue influence over the victim, and includes . . . [an] adult cohabitant of a parent."). Both of these arguments hinge on Bryant's assertion that he was not an "adult cohabitant" of Mother for purposes of establishing that he was in a position of special trust as to B.S. Bryant argues on appeal that the status of "adult cohabitant" requires a sexual or marriage-like relationship between two cohabiting adults, whereas his relationship with Mother was platonic, and they lived together only as roommates.

¶33 We decline to directly address the district court's failure to instruct the jury on the definition of an adult cohabitant because Bryant did not preserve the issue by objecting to the absence of such an instruction. *See generally State v. Rudolph*, 970 P.2d 1221, 1227 (Utah 1998) ("[I]n order to preserve an issue involving a jury instruction, the objecting party must make an objection in the trial court, stating distinctly the matter to which he objects and the ground of his objection." (emphasis omitted) (internal quotation marks omitted)). Further, Bryant's counsel invited any such error when the district court asked, "Do we have any exceptions or objections to these instructions as now prepared?" and counsel responded, "No your honor, they appear to conform to the code." *See generally Featherhat*, 2011 UT App 154, ¶ 14 (explaining that alleged errors in jury instructions are invited when counsel represents to the trial court that there is no objection to the instructions). Because Bryant failed to preserve this issue by timely objection, *see Rudolph*, 970 P.2d at 1227, and invited any resulting error, *see Featherhat*, 2011 UT App 154, ¶ 14, we decline to examine the district court's failure to give a specific instruction on the definition of an adult cohabitant.

---

6. We also observe nothing in the record that suggests to us that the efforts of the parties and the district court did not constitute "every reasonable effort" to secure DJ's attendance at trial. *See State v. Menzies*, 889 P.2d 393, 402 (Utah 1994).

¶34    Nevertheless, the definition of "adult cohabitant" is central to Bryant's other jury instruction argument:  that he was entitled to a lesser included offense instruction for the two rape charges arising from sexual encounters with B.S. that occurred while Bryant and Mother were residing in the same house.

> When a defendant requests an instruction on a lesser included offense, "it must be given if (i) the statutory elements of greater and lesser included offenses overlap to some degree, and (ii) the evidence provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."

*State v. Spillers*, 2005 UT App 283, ¶ 15, 116 P.3d 985 (quoting *State v. Hansen*, 734 P.2d 421, 424 (Utah 1986)).  Bryant argues that there was a rational basis in the evidence for the jury to find that he was not an adult cohabitant of Mother, and therefore not in a position of special trust as to B.S., and therefore guilty only of the lesser included offense of unlawful sexual activity with a minor rather than rape.  *See generally* Utah Code Ann. § 76-5-401 (2008) (defining unlawful sexual activity with a minor); *id.* § 76-5-402 (defining rape); *id.* § 76-5-404.1(h) (defining "position of special trust" to include adult cohabitants of a minor's parent); *id.* § 76-5-406 (defining lack of consent).

¶35    Bryant contends that a jury could have found that he and Mother were not cohabitants because their relationship was not sexual or marriage-like in nature.  *See generally* Black's Law Dictionary 260 (6th ed. 1990) (defining cohabitation, in part, as "[t]o live together as husband and wife").  However, the district court rejected Bryant's interpretation of cohabitation for purposes of establishing a position of special trust, stating that "in the domestic violence code, a co-habiting is anybody under the same roof."  Although the district court's formulation of cohabitation may have been somewhat overbroad, this court has subsequently held that, in this context, cohabitation is established merely by two persons residing together without any requirement of a sexual or marriage-like relationship.  *See State v. Watkins*, 2011 UT App 96, ¶¶ 9–16, 250 P.3d 1019, *cert. granted*, 262 P.3d 1187 (Utah 2011).

¶36    In *State v. Watkins*, 2011 UT App 96, 250 P.3d 1019, this court recognized that the "the meaning of [cohabitation] depends upon the context in which it is used."  *Id.* ¶ 12 (alteration in original) (internal quotation marks omitted).  In the "position of special trust context," *id.* ¶ 14, the court stated that "defining cohabitants as those who 'reside[] or ha[ve] resided in the same residence' is a reasonable definition . . . because it is

consistent with the plain meaning of cohabitant," *id.* (alterations in original) (citation omitted). After examining the various definitions of residency, the court concluded, "Although a person may live somewhere temporarily, if he dwells there continuously and he treats the place as his home, he may be considered a resident of the place for purposes of determining whether he is a cohabitant of other individuals living there." *Id.* ¶ 16. The court then determined that evidence indicating "that Watkins lived with [the victim's father] full-time, had his own room, and paid rent . . . was sufficient evidence that he was a *resident of the home and, therefore, a cohabitant* of [the victim's father]." *Id.* (emphasis added).

¶37     In this case, it is undisputed that Bryant and Mother resided together at the time of the incidents underlying the two rape charges at issue. Bryant's assertion that his living arrangement with Mother was not marriage-like is supported by the evidence, but there is no evidence that Bryant did not "dwell[] there continuously and . . . treat[] the place as his home." *See id.* Thus, there was no rational evidentiary basis upon which the jury could have determined that Bryant was not in a position of special trust as "a resident of the home and, therefore, a cohabitant of [Mother]." *See id.* Accordingly, Bryant was not entitled to a jury instruction on unlawful sexual activity with a minor as a lesser included offense of rape.[7] *See generally Spillers*, 2005 UT App 283, ¶ 15.

CONCLUSION

---

7. We also agree with the State that Bryant has completely failed to account for the possibility that the jury convicted him on these two rape charges based not on his cohabitancy with Mother but rather on the theory, presented by the State at trial, that "the victim is 14 years of age or older, but younger than 18 years of age, and the actor is more than three years older than the victim and entices or coerces the victim to submit or participate" in the sexual activity. *See* Utah Code Ann. § 76-5-406(11) (2008) (defining lack of consent); *State v. Gibson*, 908 P.2d 352, 356 (Utah Ct. App. 1995) ("[T]he 'enticement' of a teenager by an adult occurs when the adult uses psychological manipulation to instill improper sexual desires which would not otherwise have occurred."). Bryant's failure to brief this alternate theory of guilt provides an alternate basis on which to affirm these two convictions. *Cf. State v. Hurt*, 2010 UT App 33, ¶ 16, 227 P.3d 271 ("[T]he State correctly asserts that Hurt's appellate brief fails to even acknowledge the district court's reliance on Hurt's consent, much less present any reasoned argument or authority against it.").

¶38    The district court erred when it applied the 2007 amendment to Utah Code section 76-5-302 to sentence Bryant to life in prison without parole for the aggravated kidnapping that Bryant committed in 2004.  We therefore vacate Bryant's aggravated kidnapping sentence and remand for resentencing on that conviction.  We also reverse the district court's ruling that Bryant's child abuse conviction merged into his kidnapping offense and remand for the imposition of a sentence on the child abuse conviction.  In all other respects, we affirm the district court's judgment.

_____
William A. Thorne Jr., Judge

                                   -----

¶39    WE CONCUR:

_____
James Z. Davis, Judge

_____
Michele M. Christiansen, Judge